FREDERICK J. WHITE v. THE LUMIERE NORTH AMERICAN
COMPANY, LIMITED.

May Term, 1906.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, and HASELTON, JJ.

Opinion filed October 29, 1906.

*Master and Servant—Construction of Executory Contract of Employment—Wrongful Dismissal of Servant—Resulting Rights of Servant—Evidence—Construction of Series of Letters—Question for Jury—Exceptions to Charge— Too General.*

Where one party to an executory contract prevents its performance, or puts it out of his power to perform on his part, the other party may treat the contract as thereby terminated, and sue immediately for whatever damage he has suffered thereby.

In assumpsit for breach of an executory contract, it appeared that on September 5, 1901, by a written contract, defendant employed plaintiff in its business for the term of five years from that date at an agreed annual salary; that plaintiff immediately entered upon said employment and served therein to the satisfaction of defendant till October 15, 1903, when he received notice from defendant that it had leased and transferred to another corporation, for a period extending beyond the limit of plaintiff's employment, all its plant, assets, and business, including its right to plaintiff's services, and that the lessee would not immediately need plaintiff's services, but would continue to pay him his salary "on the sole condition" that he should hold himself subject to the lessee's orders, and requesting him to cancel the powers with which he had been intrusted so as to "leave the field absolutely free" for said lessee. Thereupon plaintiff treated his contract as terminated, and on October 19, 1903, began this suit. *Held*, that defendant's conduct amounted to a dismissal of plaintiff without cause, entitling him to bring immediate action for breach of his contract of employment.

It is of the essence of said contract of employment that defendant should keep plaintiff in its service for the agreed term; and to

this extent, at least, it was bound to perform, even if it was not also bound to keep plaintiff supplied with work during that period.

Defendant had the power to thus dismiss plaintiff without cause, thereby subjecting itself to the consequences of a violation of its contract; and after notice of his discharge, plaintiff was not at liberty to disregard his dismissal by continuing his labor and claiming pay for it.

Hence, a written statement showing cash advanced by plaintiff after he received notice of his discharge, and purporting to have been settled with the representative of said lessee, and which was offered in evidence by defendant as tending to show that plaintiff was then acting for it, was immaterial and was properly excluded.

Evidence examined and *held* that whether plaintiff so assented to said lease during its negotiation as to preclude him from relying upon it as a breach of his contract of employment is a question which was properly submitted to the jury.

Ordinarily, the construction of written correspondence is for the court; but where the case turns upon the proper conclusion to be drawn from a series of letters taken in connection with other facts and circumstances, the question may be properly submitted to the jury.

Where defendant made a large number of requests to charge, and excepted "to the failure to charge as requested, in so far as there may have been an omission to charge as requested, and to the charge as given upon these points on those several requests," such exceptions are qualified and too general to be considered.

SPECIAL ASSUMPSIT by a servant against his master for breach of an executory contract of employment. Plea, the general issue with notice. Trial by jury at the September Term, 1904, Chittenden County, *Powers*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion fully states the case.

*Powell & Powell,* and *W. L. Burnap* for the defendant.

The lease by defendant of its plant, business, and assets was not a breach of its contract with the plaintiff. A renunciation of a contract must be entire, distinct, absolute and une-

quivocal, and must go to the essence. *Vittum* v. *Estey,* 67 Vt. 158; 9 Cyc. 363; Harriman, Contracts, §521; *Rioux* v. *Ryegate Brick Co.,* 72 Vt. 148.

By the making of the lease, defendant did not put it out of its power to perform. *Turner* v. *Sawdon Co.,* 2 K. B. D. 653; *Aspdin* v. *Auston,* 5 Q. B. 671; *Dunn* v. *Sayles,* 5 Q. B. 685; *Emmens* v. *Elderton,* 4 House of Lords, 664; *Clark* v. *Marsiglia,* 43 Am. Dec. 671; *Rhodes* v. *Forward,* 1 Appeals 257; Clark, Contracts, 647; *Stone* v. *Bancroft,* 112 Cal. 652; *Sands* v. *Potter,* 165 Ill. 397, 56 Am. St. Rep. 253; *Decamp* v. *Hewitt,* 43 Am. Dec. 209; *Lovering* v. *Lovering,* 13 N. H. 513; *Hopkins* v. *Young,* 11 Mass. 302; *Frost* v. *Clarkson,* 7 Cow. 24; 9 Cyc. 640 and notes; *Fitzgerald* v. *Grand Trunk Ry.,* 63 Vt. 169.

It is well settled in this State that the construction of written correspondence is for the court. *Gove* v. *Harrinton,* 59 Vt. 139; *Currier* v. *Robinson,* 61 Vt. 139; *Granite Co.* v. *Mulliken,* 66 Vt. 465; *Blaisdell* v. *Dorn,* 72 Vt. 295; *Smith Woolen Machine Co.* v. *Holden,* 73 Vt. 396; *Davis* v. *Bowers Granite Co.,* 75 Vt. 291.

*V. A. Bullard* and *R. E. Brown* for the plaintiff.

Where one party to an executory contract prevents performance, or puts it out of his power to perform on his part the other party may treat the contract as thereby terminated, and sue immediately for his damage. *Lovelock* v. *Franklyn,* 8 Q. B. 371; *Ford* v. *Tilley,* 6 Barn. & C. 325; *Bowdell* v. *Parsons,* 10 East 359; *Crist* v. *Armour,* 34 Barb. (N. Y.) 378; *Short* v. *Stone,* 8 Q. B. 358; *Sheehan* v. *Barry,* 27 Mich. 217; *Crabtree* v. *Messersmith,* 19 Iowa 179; *Hawley* v. *Keeler,* 53 N. Y. 114; *Smith* v. *Jordon,* 13 Minn. 246; *Wolf* v. *Marsh,*

54 Cal. 228; *Newcomb* v. *Brackett,* 16 Mass. 161; *Delameter* v. *Miller,* 1 Cow. (N. Y.) 75; *Bassett* v. *Bassett,* 55 Me. 127; *Shaffner* v. *Killian,* 7 Ill. App. 620; *Boyle* v. *Guysinger,* 12 Ind. 273; *Hart* v. *Summers,* 38 Mich. 399; *Branson* v. *Oregonian R. Co.,* 10 Ore. 278; *Synge* v. *Synge,* (1894) 1 Q. B. 466.

Defendant by the lease of all its plant, business, and assets for a period extending beyond the limit of plaintiff's employment, put it out of its power to perform and thereby absolutely terminated the contract. *Planche* v. *Colburn,* 8 Bing. 14; *Woolner* v. *Hill,* 93 N. Y. 576; *Lovell* v. *Ins. Co.,* 111 U. S. 264; *Chicago* v. *Tilley,* 103 U. S. 146; *Hinchley* v. *Steel Co.,* 121 U. S. 264; *W. U. Tel. Co.* v. *Semmes,* 73 Md. 9; *Seipel* v. *Ins. Co.,* 84 Pa. St. 47.

Defendant had the power to cancel the contract, thereby subjecting itself to damage to plaintiff. *Danforth* v. *Walker,* 37 Vt. 239; *Derby* v. *Johnson,* 21 Vt. 17; *Nye* v. *Taggart,* 40 Vt. 29.

WATSON, J. The contract in question, dated September 5, 1901, was entered into by the defendant as the party of the first part, and by the plaintiff as the party of the second part. It contains clauses material in this case as follows: (1) "The party of the first part hereby agrees and doth hereby employ the party of the second part for the period of five years from the date hereof as a permanent member of its advisory or executive board of directors in America and also to supervise and protect the interests and business generally of the party of the first part." (2) "As remuneration for the said services the party of the first part agrees to pay the party of the second part an annual salary of four thousand eight hundred dollars

14

per year for the first three years of this agreement and the fourth year an annual salary of six thousand dollars per year, and the fifth year an annual salary of seven thousand two hundred dollars, the above mentioned salary and remuneration to be paid to the party of the second part in monthly installments on the first of each and every month, exclusive of expenses," etc.   (3) "In consideration of the agreement of the party of the first part the party of the second part hereby undertakes and agrees to devote his entire time for the above mentioned period of five years in the service of the party of the first part as a permanent member of the advisory or executive board of directors aforesaid and in the protection, supervision and conduct of the business generally of the party of the first part, to the best of his ability."

The defendant is an English company organized under the laws of the Kingdom of Great Britain, with its principal office in the city of London.   The purpose and object of the company was to acquire the right to manufacture, exploit, and sell photographic dry plates produced by what is known as the Lumiere process.   This process was controlled by what is called here the French Company.   The latter company was the promoter of the English Company and the owner of more than half of its capital stock.   The defendant's plant, located at Burlington in this State, was completed and ready for occupation in February, 1903, and the defendant had notice thereof from the plaintiff who in all respects faithfully and to the defendant's satisfaction performed his part of the contract up to and including the 15th day of October, 1903, when he received notice from the defendant that its entire plant and property, real and personal, at Burlington, had been leased to the French Company and had passed into its hands for a period exceeding the unexpired portion of the plaintiff's term of em-

ployment. Notice of this fact was by letter dated, London, October 7, 1903, in which the defendant further stated that the Frénch Company intended to conduct the business themselves in accordance with their own ideas with the staff which they were sending from Lyons for that purpose and which they considered was sufficient for the initiatory period and for the training of the staff, etc. And "Under those circumstances, the mission which has been entrusted to you for the construction of the manufactory being terminated, and the position which had been reserved for you as a member of the advisory board not having to be filled during a period, the duration of which it is impossible to foresee, we beg you to cancel the powers with which you have been entrusted and which will now be unnecessary, and to leave the field absolutely free to the staff delegated by Messrs. Lumiere, which will arrive at Burlington on the 19th October, and to furnish to this staff all the means of organizing the business in accordance with the instructions which it has received from Messrs. Lumiere. The Lumiere Society will, of course, continue to pay you your salary on the sole condition on your side to remain at its entire disposition, in case, in the future, they should think proper to make use of your business experience in America, and of your high commercial ability. If you should not be disposed to accept such a proposition which will oblige you to remain without occupation at Burlington, and if you should desire to be at liberty to employ your energies in another business, we should be quite disposed to discuss with you any proposals for rescinding the agreement with the Societe Lumiere et Fils, who have now the entire control of our affairs, which agreement has still three years to run." The plaintiff did not accept a position with the French company under the terms mentioned in the foregoing letter,

and on the 19th day of October, 1903, this suit was commenced against the defendant for breach of contract. During the introduction of evidence the court below held as a matter of law that this letter was not in itself such an essential breach of the contract as warranted the plaintiff in treating the contract as having been terminated thereby. An exception was taken by the plaintiff to this ruling but it is not for consideration, since the case is here only on questions saved by the defendant.

At the close of the evidence the defendant moved for a verdict on the ground that the consummation of the lease whereby the entire plant, assets, and business of the defendant company passed into the hands of the French company for a period extending beyond the limit of plaintiff's employment, did not so far put it out of the defendant's power to perform its contract with the plaintiff as to amount to a revocation of the contract. Whether this motion should have been granted is a question for consideration.

In support of the motion it is urged that the essence of the contract, as far as the plaintiff was concerned, was the salary and compensation which he was to receive under it; that whether work should be exacted of him was a matter wholly with the defendant, not of the essence of the obligation, and if the plaintiff received his salary to the end of the term of his contract he was not to be heard to complain because he was given no work; that the giving of the lease in no way prevented the defendant from paying the plaintiff his salary as it should become due; and that since the letter of October 7, as interpreted by the court, did not constitute an essential breach of the contract, and there was no salary due the plaintiff when he brought this suit, the motion should have been granted. On the other hand, it is argued that the giving of the lease together with the notice to the plaintiff contained in the letter

constituted an entire revocation of the contract and terminated it.

As already observed the defendant by the terms of the contract agreed to and did "employ" the plaintiff for the period of five years.    Whether the word "employ" as there used might properly be construed to mean that the defendant would keep the plaintiff supplied with actual work we do not consider; for clearly the intention of the parties was that it should not imply less than that the defendant should keep the plaintiff in its service throughout the term specified.    This is of the essence of the contract, and to this extent, at least, the defendant was bound to perform.    *Emmens* v. *Elderton,* 4 H. L. Cas. 624.    Did the defendant do this?    No question is made but that by its lease the defendant was made powerless to furnish the plaintiff with work, and we think it also thereby severed the relation of master and servant.    The defendant informed the plaintiff by the letter of October 7, that the leasing of the business to the French company was an accomplished fact, and that Gentlemen Lumiere had taken on themselves, personally, the responsibility of starting the business from both the commercial and technical point of view.    The plaintiff was therein asked to cancel the powers with which he had been entrusted and to leave the field absolutely free to the staff delegated by Messrs. Lumiere.    He is also there told that the "Lumiere Societe," which means the French company, would of course, continue to pay him his salary on the sole condition on the part of the plaintiff that he remain at its entire disposition, in case, in the future they should think proper to make use of his experience and ability.    But that if he should not be disposed to accept such a position, and if he should desire to be at liberty to employ his energies in another business, the defendant would be quite disposed to discuss with him "any proposals for

rescinding the agreement with the Societe Lumiere et Fils, who have now the entire control of our affairs, which agreement has still three years to run." The fair interpretation of this part of the letter is that all the defendant's rights to the plaintiff's services by contract, had been transferred with the property and business to the French company by the lease. Manifestly the defendant so understood it, since otherwise there would have been no occasion to discuss proposals for rescinding the agreement with the French company then in control of the affairs, as lessee. And that the agreement with the plaintiff is the one to which reference is there made appears by the last clause in the same connection, "which agreement has still three years to run." The record shows no other agreement of which this could have been said. Thus the defendant, as far as it had power so to do, disposed of all right to the plaintiff's services for the balance of his term of employment. But the employer could not get rid of its contract in that way. The contract contains no provision for such a transfer, and none can be implied. The plaintiff was engaged to serve the defendant, but this carried with it no implication that he would serve a lessee. We think the giving of the lease by the defendant which included a transfer of all its rights to the plaintiff's further services, of which the plaintiff was notified by the letter of October 7, ended the relation of master and servant between them, and operated as a dismissal of the plaintiff without cause.

The case of *Brace* v. *Calder* (C. A.), [1895] 2 Q. B. 253, is very much in point. There the plaintiff had agreed with the defendants, a firm consisting of four members, to serve them as manager of the office part of the business of Scotch whiskey merchants then carried on by them in the city of London and surrounding districts for the term of two years, at a fixed salary. Before the expiration of the term two of the

partners retired, the other two continuing to carry on the business under the same firm name.   The plaintiff, having no notice of the change, continued to act as manager for some months thereafter.   When he learned of the transfer of the firm's business, the transferees insisted on their right to his services under his contract of employment with the old firm; but he refused to recognize such right in them, and declined to act for them.   The plaintiff brought suit before the term of the contract had expired, to recover his whole salary for that portion unperformed.   One question before the Court was to the effect of the dissolution of the partnership.   It was held that the dissolution operated as a wrongful dismissal of the plaintiff.

In *Lovell* v. *St. Louis Mut. Life Ins. Co.,* 111 U.S. 264, 28 L. ed. 423, a life insurance company had transferred all of its assets to another company, the transferee in consideration thereof agreeing to re-insure all risks of the transferrer and to assume all its liabilities.   It was held that by transferring all its assets and obligations to the new company the old company totally abandoned the performance of its contract with the complainant, and that the latter had a right to consider his insurance contract as terminated by the act of the company, and to sue to recover back whatever was justly due him by reason of premiums paid.   Mr. Justice Bradley speaking for the Court said: "Where one party to an executory contract prevents the performance of it, or puts it out of his own power to perform it, the other party may regard it as terminated and demand whatever damage he has sustained thereby."   In *Pierce* v. *Tennessee Coal, Iron & Railroad Co.,* 173 U. S. 1, 43 L. ed. 591, the railroad company promised to pay one of its employees, who had been injured in the performance of his duties, certain wages a month, and to furnish him with certain

supplies as long as his disabilities continued, in consideration whereof the employee agreed to do such work for the company as he was able to do, and to release it from all liability upon his claim for damages for his injuries. This contract was performed for some months, and then the company abandoned it and discharged the employee from its service. The suit was brought for damages for the company's breach and abandonment of the contract. The evidence tended to show that by the injuries the employee was permanently disabled. The fundamental question in the case was whether the contract in suit was a contract intended to last during the employee's life, or was a mere contract of hiring from month to month, terminable at the pleasure of either party at the end of any month. It was held to be for so long as the employee's disability to do full work continued, which might be for life, and that the employee had a right to treat the contract as absolutely and finally broken, and to maintain the action as for a total breach of the entire contract, and to recover all the damages resulting therefrom.

The case of *Turner* v. *Sowdon & Co.* (C. A.), [1901] 2 K. B. 653, cited by the defendant, is not in conflict with the doctrine laid down in the cases to which we have made reference. There the contract of employment, in its substantial features, closely resembles the one now before us. The employer agreed to engage and employ the employee as servant and representative salesman for the term of four years, salary to be paid in monthly installments. After the employee had acted in the performance of his contract for some time, he was notified by the employer that although he would still be in the employ of the firm and at their disposal he would not thereafter be required to perform any duties; that he would please call for his salary when the next installment should be due

and he would then be given any further instruction.    The employee called at the office of the firm the next day, but was requested to leave.    Immediately afterwards circulars were issued by the firm to their customers stating that the employee had no authority to transact any business in their behalf.    The employee then commenced business on his own account, and brought his action against the firm for damages for breach of contract, on the ground that the firm after the day of notice to him had neglected and refused to continue to engage and employ him as their servant, etc.    Following the case of *Emmens* v. *Elderton,* to which reference has already been made, the Court held that the word· "employ," as used in the contract, meant to retain in service, and not to give actual work to be done by the person employed, hence that judgment should be entered for the defendant.    It will be noticed that the defendants there, unlike the defendant in the case before us, continued to own and carry on the business, and at all times had the power to perform their part of the contract.

Nor is the case of *Sands* v. *Potter,* 165 Ill. 397, 56 Am. St. Rep. 252, cited by the defendant in conflict.    There while the servant was engaged in the performance of his contract of service, a corporation was formed by the master and thereafter the business was carried on in the corporate name, but all the stock was taken by the master and the business conducted the same as before.    It was held that the incorporation of the: company was a mere nominal affair, and that the contract between the master and the servant was not abrogated because· of its formation.

The defendant further contends that the court erred in not holding as a matter of law that the correspondence discloses such acquiescence in the proposed lease and assent thereto by the plaintiff during the negotiations as precludes him from

setting up the lease as a breach of the contract, and in not
directing a verdict accordingly.    But the question of assent did
not rest on the correspondence alone.    The letters upon which
the defendant bases its contention in this regard were written
while the plaintiff was engaged in the performance of his
duties under his contract covering a period of some fourteen
months ending about the time this suit was brought.    On
August 21, 1902, the plaintiff wrote a letter to the defendant
company in effect stating, among other things, that upon in-
formation obtained regarding the working of competitors, he
had come to the conclusion that it would be absolutely neces-
sary for the company to be in a position to supply films, papers,
and chemicals in order to place successfully its plates on the
American market.    On the 8th of November, following, the
manager of the company wrote the plaintiff that "Lumieres
had agreed to purchase the English Company, Stock and Bar-
rel," subject to the confirmation of their shareholders.    "Lu-
mieres take over all contracts and liabilities.    * * *    The time
limit for settlement is fixed for March 31st next.    They are to
notify us by Dec. 28th that they will exert or relinquish their
option.    * * *    I hope that this new development will mean a
good thing for you, as the present unsatisfactory condition has
been an impossible one and must have caused you some anxi-
ety."    Thenceforth there was a large amount of correspond-
ence between the plaintiff and the defendant touching the pro-
posed lease of defendant's plant and business to the French
company, until the plaintiff received notice by the letter of
October 7, that it "is now an accomplished fact."    The plain-
tiff made suggestions from time to time regarding necessary
details in effecting that purpose, and at the request of the
defendant prepared and forwarded to it inventories of the
plant and machinery to be used in connection therewith.    The

correspondence does not show, however, that he ever in terms in his own behalf assented to any leasing that would terminate his employment by the defendant. On the contrary in a letter from him to the directors of the company dated April 16, 1903, he stated: "Yesterday I received a communication from your secretary, dated April 1st, 1903, in which, after referring to the completion of the factory and the disputes with the contractors regarding work incomplete, he states: 'with regard to what remains to be done it is obvious that you must look to receive your instructions from Lyons, and not from here, as the leasing of this company, stock, lock, and barrel to Messrs. Lumiere & Sons of Lyons may be now considered an accomplished fact.' He further states that I shall doubtless receive some information by cable in a few days from Messrs. Lumiere & Sons regarding going to Europe to consult with them. Now in order to prevent any misunderstanding as to my position here, which would mean a further delay in the starting up of the business, I must point out to you the fact that my contract is with the Lumiere North American Co., Ltd., and until such time as this contract is properly dissolved or cancelled to the mutual satisfaction of all parties concerned, I cannot possibly recognize instructions emanating from any other source than the directors of the company I am engaged by. I think you must agree that this is my legal position." In the same letter the plaintiff then goes on to say that when the business is formally taken over by Lumiere & Sons, it will be necessary to send him full and detailed instructions regarding the many formalities which must necessarily be performed to invest Lumiere & Sons with the property under the various legal requirements of this State, not forgetting a certified copy of the lease which by the laws here must be registered. The defendant notified the plaintiff by letter dated April 30, 1903, that the lease had

been ratified by the shareholders, but that it would be "some little time before the deed, which will be a somewhat compli-cated document, can be prepared, and Messrs. Lumiere do not propose to avail themselves of any rights under the lease, until the document is executed." In its letter dated May 19, 1903, to the plaintiff, the defendant referring to plaintiff's letter of April 16, wherein he asks instructions as to his exact position, states that the actual lease had not been sanctioned, but only power given to the directors to bring about such lease. That the lease is not an accomplished fact, and until the lease is signed, nothing will be changed and the plaintiff must deal with the directors of the defendant, adding, "He can and ought to consider what will be his position after the signing of the lease, nothing is more just and on our part we are considering it much and he can rely on it that we shall not forget him." June 10, 1903, the plaintiff wrote defendant, "I was in hopes that my letter addressed to your directors, under date of April 16, would clearly define the position that I should have to take with reference to conducting communications direct with Lyons, pending the receipt of instructions from your board upon the subject. * * * If it is the desire of your directors that I should open negotiations with the French Societe Lu-miere, with a view of making such arrangements with them as will permit me to cancel my present contract with your com-pany, I shall be pleased to do so upon receiving from you a certified copy of a resolution passed by your directorate, ap-proving and authorizing me to open such negotiations without in any way prejudicing my present contract with your com-pany." On July 2, one of the directors for the company, wrote the plaintiff enclosing an official letter covering a resolution which had been signed by the directors individually but not passed at a meeting of the board, together with a copy of the

resolution so signed, and stating that the resolution would be confirmed and approved at the first board meeting thereafter held.    On receipt of this official letter and copy of resolution the plaintiff replied thereto: "The resolution and official letter attached do not quite cover the ground required.    The resolution authorizes me to enter into arrangements with the Societe Lumiere, to act as its representative in the United States, and your official letter states that the resolution formally authorizes me making arrangements 'To continue the services you have hitherto rendered to that company as its representative and duly authorized agent in the United States.'    The letter I received from Mr. Ferdinand Coste, and of which I sent you a copy, requested me to let him know whether I would eventually agree to act as their Commercial Manager in this country; the two above mentioned positions are entirely different.    I think, however, I have made myself perfectly plain in previous correspondence, and, under these circumstances, and especially having regard to the indecision that seems to exist in completing the details of taking over the business, perhaps it will be well to defer further discussion upon the subject until such time as some definite proposal is made to me."    Thus the matter drifted along until the writing of the letter of October 7, by the defendant and its receipt by the plaintiff.

The plaintiff testified that he never expressly consented to the leasing of the property, and that anything he did or any information that he furnished with reference to the leasing, was as the agent of the defendant and because he was requested to do so by it; that the defendant requested him to do certain things and he as agent was obliged to do them; that if they wrote him for an inventory of machinery, he supplied it; that he had nothing to do about defendant's leasing, and had no option to tell defendant whether it should lease the business or

not; that he was never asked to consent to any arrangement between the defendant and the French company, and beyond what information was given him by the letter of October 7, he had no intimation that he had been provided for in the lease until nearly three months after the commencement of this suit.

The record shows other evidence bearing on the question of the plaintiff's assent to the transfer of the property and business to the French company by lease, but enough has been particularly noticed to make it clear that this question did not stand on the correspondence alone.    The plaintiff was entitled to have it determined on the whole evidence bearing thereon, and while it is true that generally the construction of written instruments is a question for the court, it is likewise true that where the case turns upon the proper conclusions to be drawn from a series of letters taken in connection with other facts and circumstances it is one which may properly be referred to a jury.    *Rankin* v. *Fidelity Ins. T. & S. D. Co.*, 189 U. S. 242, 47 L. ed. 792; *West* v. *Smith*, 101 U. S. 263, 25 L. ed. 809.

Defendant excepted to that portion of the charge where the court told the jury that the consummation of the lease for a period which exceeded the limit of the plaintiff's employment, and by the terms of which all the plant, property, and business of the defendant at Burlington passed into the hands of the French Company, was a breach of the contract entitling the plaintiff to maintain this action, unless his conduct prior to the consummation of the lease, or his conduct subsequent precludes him from setting that up as a breach.    This part of the charge with the exception of the last clause is in accordance with our holding on the same question raised by the motion for a verdict and needs no further discussion.    The modifying clause relating to subsequent conduct was error, but it was an error in defendant's favor and not here available.    As we have

already seen the contract in question is one for services merely, and in law the defendant dismissed the plaintiff without cause. This it had the power to do, thereby subjecting itself to the consequences of a violation of its contract, and the plaintiff was not at liberty to disregard the dismissal by continuing his labor and claiming pay for it after he had received notice of his discharge. *Derby* v. *Johnson,* 21 Vt. 17.

For the same reason, if for no other, Exhibit T, showing cash advanced by the plaintiff after he received notice of his discharge, and purporting to have been settled with the representative of the French company, was properly excluded. Its admissibility is claimed only on the ground that it was evidence showing that the plaintiff was then acting for the defendant. Yet as just seen the plaintiff could not affect the discharge by continuing his service, hence the evidence was immaterial.

The defendant made a large number of requests to charge, covering more than seven pages of the printed record. It excepted "to the failure to charge as requested, in so far as there may have been an omission to charge as requested, and to the charge as given upon these points on those several requests." But these exceptions are qualified and too general to be noticed. *Luce* v. *Hassam,* 76 Vt. 450.

*Judgment affirmed.*