JOHN MATTHEWS v. MINNESOTA TRIBUNE COMPANY.
BERNARD T. CAMPBELL v. SAME.[1]

June 11, 1943.

Nos. 33,450, 33,451.

[1]Reported in 10 N. W. (2d) 230.

*Faegre & Benson, Raymond A. Scallen,* and *Donald L. Robertson,* for appellant.

*Leonard, Street & Deinard* and *Hyman Edelman,* for respondents.

LORING, JUSTICE.

Two suits by defendant's employes for severance pay pursuant to a labor contract between defendant, a newspaper publisher, and the Twin Cities Newspaper Guild on behalf of the employes. The cases are consolidated for this appeal. The pertinent part of the contract is as follows:

"15. Upon dismissal, except for drunkenness, proven dishonesty

or gross neglect of duty, an employe shall receive cash severance pay, in a lump sum, equal to one week's pay for employes of 30 weeks continuous service, and one additional week's pay for every additional 30 weeks continuous service, or major fraction thereof, up to a maximum of 20 weeks pay, such pay to be computed at the highest weekly rate of salary received by the employe during the 12 months immediately preceding his dismissal."

The facts are not in dispute. It is plaintiffs' contention that they were "dismissed" within the meaning of this contract, and defendant's contention that they were not. The court directed a verdict for plaintiff in the Matthews case, and the appeal is from an order denying defendant's motion for judgment notwithstanding the verdict or a new trial. By stipulation, the bulk of the evidence in the Matthews case was incorporated in the Campbell case, which was tried to the court, which made findings of fact and conclusions of law for plaintiff. The appeal is from an order denying defendant's motion for amended findings of fact, conclusions of law, or a new trial.

The Minnesota Tribune Company, hereinafter referred to as the Tribune company, prior to April 30, 1941, was principally engaged in publishing newspapers in the city of Minneapolis, namely, the *Minneapolis Morning Tribune,* the *Minneapolis Times-Tribune,* and the *Minneapolis Sunday Tribune.* On that date it entered into a contract, which is a part of this record, labeled "Contract of Sale," with the Minneapolis Star-Journal Company, which was also in the same line of business in Minneapolis as publisher of the *Star-Journal.* By this contract, the Tribune company, which throughout the contract is referred to as the "Seller," transferred all of its newspaper assets to the Star-Journal company, which is therein referred to as the "Buyer." The Tribune company received in exchange one-third of the stock in the Star-Journal company, which thereafter was to be known as the Minneapolis Star-Journal and Tribune Company.

Beginning May 1, 1941, the actual printing of the *Minneapolis Morning Tribune* was transferred to the Star-Journal building, the

*Minneapolis Times-Tribune* was discontinued, and in its stead the *Minneapolis Daily Times* was published at the Tribune building. The narrow question presented is whether or not the defendant Tribune company then ceased to be the employer of the plaintiffs.

### MATTHEWS CASE

Matthews was an artist and layout man for the Tribune newspapers and had been in the defendant's employ for about 20 years. He first learned of the proposed sale or transfer of the newspapers on April 30, 1941, when a public announcement was made. He continued to work at the Tribune building on the *Times* for about a week from that date, when his immediate superior told him to see the managing editor of the *Star-Journal* about a job on the *Morning Tribune* at the Star-Journal building. He did, and, upon being told that there was no longer a place for him at the Tribune, went to work for the *Star-Journal*. His salary was somewhat less than he had received from the Tribune company, but he lost no time from work.

### CAMPBELL CASE

Campbell had been in defendant's employ since 1925 and in 1941 was city editor of the *Times-Tribune*. On April 30, 1941, he was told by his immediate superior that "the *Star* has bought this paper." Campbell continued to work in the Tribune building on the *Minneapolis Daily Times,* doing the same work at the same pay, and in fact in the same office, that he did on the *Times-Tribune*.

Both men continued to receive their pay for several weeks after April 30, 1941, on checks of the Minnesota Tribune Company, which company, the record shows, was reimbursed for these amounts by the new Minneapolis Star-Journal and Tribune Company. Thereafter they were paid by the Minneapolis Star-Journal and Tribune Company.

■ The principal question is whether or not defendant's sale of its newspaper assets and its retirement from the publishing field constituted a dismissal of plaintiffs within the meaning of the contract. It is defendant's position that the sale or transfer of its

newspaper assets to the newly formed Star-Journal and Tribune company in exchange for approximately one-third of the stock in that company did not constitute a termination of plaintiffs' employment.

It is not denied that after May 1, 1941, the defendant corporation was no longer engaged in the newspaper publishing business in Minneapolis. Its president so testified. However, the corporation retained its corporate existence as the proprietor of a one-third interest in the new corporation, and it engaged in other activities unconnected with newspaper publishing.

Defendant's position becomes untenable when we consider that it and the new Star-Journal and Tribune company are distinct and separate entities. The nature of a corporation is such that it is an entity separate and distinct from the body of its stockholders. Gallagher v. Germania Brewing Co. 53 Minn. 214, 54 N. W. 1115. (Other cases in 2 Dunnell, Dig. & Supp. § 1969.) It is not a fiction of the law but a real legal unit possessing individuality and endowed by the law with many of the attributes of persons. In re Trust Under Will of Clarke, 204 Minn. 574, 284 N. W. 876. The transfer of interest was as complete and effective as it would have been if the Tribune company had received no stock in the Star-Journal company.

When an employer disposes of his business, does it operate as a discharge of his employes? The authorities are almost unanimous that it does, principally for the reason that the employer is no longer able to perform his part of the bargain. The question is usually presented in cases involving suits by the employe for breach of a contract of employment for a definite time. Such a case was White v. Lumiere N. A. Co. Ltd. 79 Vt. 206, 64 A. 1121, 6 L.R.A.(N.S.) 807, where the employer leased his business for a term exceeding the duration of the employment contract, and it was held that the employe was dismissed and entitled to sue for its breach. Globe & Rutgers Fire-Ins. Co. v. Jones, 129 Mich. 664, 89 N. W. 580, 581, is much in point. There it was held that the consolidation of two insurance companies operated as a breach of the employment con-

tract between one of the companies and its agent, the court saying: "He [the employe] has a right to say for whom he will work, and under a contract to work for one company he cannot be required to work for an entirely different company."

Defendant contends that the employment contract cannot be terminated unless the employe is notified that his services are no longer required, citing Benson v. Lehigh Valley Coal Co. 124 Minn. 222, 226, 144 N. W. 774, 775, 50 L.R.A. (N.S.) 170. There it was held that where the employe continued his same work and was unaware that a change in proprietors had occurred, the former employer was liable for injuries to the employe, the court saying: "In other words, as between the parties, the relation of master and servant is not *necessarily* terminated by a sale and transfer to a third person of the business in respect to which the relation arose." (Italics supplied.) The case appears to have been decided on the ground of estoppel and that the former employer, not having advised plaintiff of the change, was not in a position to interpose it as a defense. The case is not applicable here. It presents an entirely different question.

■ Defendant contends that it was error to exclude proffered evidence to show the meaning of the word "dismissal" as used in the guild contract and the purpose of the severance pay contract. It seems to us that the meaning of the word "dismissal" is clear. The contract provides for severance pay "upon dismissal, except for drunkenness, proven dishonesty or gross neglect of duty." There are three exceptions from the provision that severance pay is due upon dismissal. Evidence to add another such exception would modify the contract. Where the contractual language is clear and unambiguous there is no room for construction. Cargill Comm. Co. v. Swartwood, 159 Minn. 1, 198 N. W. 536; Grimes v. Toensing, 201 Minn. 541, 545, 277 N. W. 236. As we view this case, it falls clearly within the rule.

Nor did the court err in excluding evidence to show the purpose of the contract. There is no claim here of fraud or mistake. The

parties entered into a plain and unambiguous contract. They are not seeking reformation.

■ On the trial evidence was received as to a contract of group insurance between defendant, for the benefit of its employes, including these plaintiffs, and the Northwestern National Life Insurance Company. A portion of an amendment to this contract is as follows:

"Whereas the Minnesota Tribune Company has disposed of its newspaper publishing business, the transfer of such business and termination of employment of its employees engaged in newspaper publishing having become effective at midnight at the end of the 30th day of April, 1941, and whereas said Minnesota Tribune Company is not now engaged in the newspaper publishing business, and does not wish to insure any remaining employees under said group policy."

Whether or not defendant had disposed of its newspaper publishing business and terminated its relation of employer to those employes engaged in that business was the very fact at issue in the trial. As an admission, in relation to a relevant issue at trial, the contract was admissible as evidence. McManus v. Nichols-Chisholm Lbr. Co. 105 Minn. 144, 117 N. W. 223, and cases cited in 2 Dunnell, Dig. & Supp. § 3409, note 17.

The orders appealed from are affirmed.

MR. JUSTICE YOUNGDAHL took no part in the consideration or decision of this case.