Walter N. **TOBRINER** et al., Board of Commissioners for the District of Columbia, Plaintiffs,

v.

**MAYFAIR EXTENSION, INCORPO-RATED**, Defendant.

David **LUXENBERG**, Third-party Defendant and Cross Plaintiff,

v.

**MAYFAIR EXTENSION, INCORPORAT-ED**, Defendant and Cross-Defendant.

Civ. A. No. 3119-64.

United States District Court
District of Columbia.

Jan. 20, 1966.

James Cashman, Asst. Corp. Counsel, Washington, D. C., for plaintiffs.

Peed & Wise, Washington, D. C., for Mayfair, Gospel Spreading and Michaux.

Warren E. Magee, Thomas G. Laughlin and Hans A. Nathan, Washington, D. C., for David Luxenberg.

WALSH, District Judge.

This matter came before the Court for hearing upon 1) Plaintiff's complaint for injunctive relief; 2) Motion of cross-plaintiff Luxenberg, to add party defendant; and 3) Cross-complaint by Luxenberg against cross-defendant Mayfair for anticipatory breach of contract.

The Court found for the plaintiff on the original action and signed the injunction order on October 27, 1965. The Court granted the third party defendant's motion to add defendant, and signed an order to that effect on October 14, 1965. The only matter now before the Court is Luxenberg's cross-complaint for damages against cross-defendant Mayfair for anticipatory breach of a leasehold agreement.

The Court finds for the cross-defendant. This case does not present an anticipatory breach

## A. THE FACTS OF THE CASE

### I. The Luxenberg-Mayfair Lease

On November 9, 1951, cross-defendant, Mayfair Extension, Incorporated, entered into an agreement with David Luxenberg and Barney Moder, for the lease of certain premises, known and identified as 3926 Hayes Street, N. E., Washington, D. C. The 1951 lease reads in pertinent part as follows:

"The lessees under this lease shall have the exclusive right to conduct a food store in the present existing premises for the duration of their lease, should said premises remain in existence, or until the present building in which said grocery store is located is demolished for reconstruction or replacement purposes. Upon the demolition of the present premises and upon completion of replacement facilities, said lessees shall have the first option to lease the food market and grocery facilities in said replacement facilities for a term at least equal to the unexpired term of this Lease, and for a percentage rental of ½% of gross sales, payable monthly."

This lease was modified by an agreement, dated August 9, 1961, extending and amending the terms of the original lease. This agreement reads in pertinent part as follows:

"1. The aforesaid Lease of November 9, 1951, shall remain in full force and effect under all of its terms and conditions, except as herein otherwise provided, in favor of the herein-named lessee.

"2. The term of the aforesaid Lease is hereby extended for a period of five years from November 15, 1961, with an option in favor of the lessee for one renewal of said lease for a period of five (5) years from November 15, 1966, under the same terms and conditions of said Lease as hereby amended provided that the lessee shall notify the lessor on or before September 15, 1966, in writing of election to exercise this option.

\*　\*　\*　\*　\*　\*

"6. The terms and conditions of the aforesaid lease granting to the lessees therein named the first option to lease the said food and grocery facilities which might replace the existing premises after the possible demolition thereof shall remain in full force and effect in favor of the lessee except only that the rate of rental to be paid in such case shall be an amount equal to an (sic) bona fide offer which the lessor may receive from another prospective tenant under like conditions as those in favor of the lessee, and in such case (sic) the lessee shall have thirty days from the date of the receipt by him of notice of the terms and conditions of said bona fide offer within which to elect to exercise said option to lease the said replaced facilities."

By letter dated April 19, 1963, the lessee exercised his option to extend the lease for an additional five years from November 15, 1966.

The basic lease, the amendment, and the extension letter were recorded with

the Recorder of Deeds on September 24, 1964.

## II. The Grand Union-Gospel Spreading Lease.

Mayfair Extension, Incorporated, is a Maryland corporation, authorized to do business in the District of Columbia, and is the fee owner of the land and the improvements which are the subject of this litigation. Sixty (60) per cent of the corporate stock is owned by Gospel Spreading Association, Inc., and forty (40) per cent is owned by L. S. Michaux. L. S. Michaux is the president of Mayfair Extension, Incorporation, and is also president of Gospel Spreading Association, Inc.

Gospel Spreading Association, a non-profit religious organization, is a District of Columbia corporation.

On May 14, 1964, Gospel Spreading Association, entered into a lease agreement with The Grand Union Company, a Delaware corporation, to lease space in a shopping center to be constructed on the northwest side of Kenilworth Avenue, between Hayes and Jay Streets, Northeast, Washington, D. C. This is the same property that is the subject of the Luxenberg-Mayfair lease.

The May 14, 1964 lease between Gospel Spreading Association and Grand Union provides, among other things, that:

"2. * * * If this lease shall be so terminated by the Tenant, then, for a period of three (3) years after such termination, the Landlord shall neither use or permit the use of the premises or any part thereof or of the Shopping Center as a food supermarket. * * *".

"12. The Landlord covenants and warrants it has full right and lawful authority to enter into this lease for the full term herein granted and for all extensions herein provided, and that it has a good and marketable title to the premises, free and clear of all occupancies, tenancies, mortgages, liens and other encumbrances except the following: None."

## III. Mayfair Repudiates, Then Reaffirms the Luxenberg Lease.

On August 5, 1964, cross-defendant, through its agent, Walker and Dunlop, wrote cross-plaintiff a letter requesting cross-plaintiff to vacate the premises on or before October 1, 1964.

On September 19, 1964, cross-defendant, through its agent, Walker and Dunlop, sent a letter to cross-plaintiff withdrawing the notice to vacate, dated August 5, 1964, and reaffirmed the aforesaid lease agreement. That letter reads as follows:

"Reference is made to a letter addressed to you August 16, 1964, in which you were requested to vacate the premises which you are occupying and known as 3926 Hayes Street, Northeast, on or before October 1, 1964. Kindly take this letter as notice to you that our principal does not at this time intend to demolish the existing premises. Therefore the request set forth in the referred to letter of August 5, 1964, is cancelled and of no effect.

"We wish also to affirm to you on behalf of our principal, Mayfair Extension, Inc., the lessor referred to, to premises which you are operating as a grocery store, that such a Lessor reaffirms to you the lease dated November 9, 1951 made between Mayfair Extension, Inc., lessor and David Luxenberg and Barney Moder, D. C. as amended, and that your lessor under such a lease intends to follow the terms required by it to be performed under such lease as amended."

## IV. Original Premises Razed.

On September 13, 1962, cross-defendant was ordered by the Department of Licenses and Inspections, D. C., to raze the buildings in question and to clear the lots involved. That order was appealed. On March 21, 1963, a hearing was held by the Board of Appeals and Review, at which evidence and testimony were taken. On March 28, 1963, the Board of Appeals

and Review sustained the order of the Department of Licenses and Inspections.

On December 18, 1964, the Board of Commissioners, D. C., filed an injunction against defendant to enforce the order of the Department of Licenses and Inspections. Defendant Mayfair Extension, Incorporated, joined David Luxenberg, the lessee, as a party defendant.

On October 27, 1965, after hearings, this Court entered an order granting the injunction and directing that the structure be razed and the lots cleared on or before February 1, 1966.

### B. THE LEGAL QUESTIONS

I. Mayfair does not Assume the Obligation to Receive Luxenberg's Bid until after Completion of the Building.

The Luxenberg lease, as modified, does not grant Luxenberg the right to demand that a building be constructed following the demolition of the present premises. If a building is constructed, the terms of the lease do not afford Luxenberg an exclusive right to conduct a food store on the new premises. Rather, he is afforded the first option to lease the food market if he can equal any bona fide offer of rental the lessor may receive from another prospective tenant.

Mayfair, Inc., has not reached a point in which they are obligated to perform at all; their obligation rests upon contingencies not yet realized. While it is true that those contingencies depend in part upon performances which they themselves have the power to bring about; nevertheless they are under no obligation to bring them about.

The cases cited by plaintiff emphasize the fact that when there has been an anticipatory breach, the injured party need not fruitlessly perform unnecessary acts on his own part in order to sustain the action for breach. Friedman v. Decatur Corporation (1943), 77 U.S.App.D.C. 326, 135 F.2d 812; Burke v. Thomas J. Fisher & Co., Inc. (D.C., D.C.1955), 127 F.Supp. 1; Landvoight v. Paul, 27 App. D.C. 423, 432 (1906); Roehm v. Horst, 178 U.S. 1, 13, 20 S.Ct. 780, 44 L.Ed. 953 (1899).

This Court fully agrees with this position, but finds this question is not in issue. Defendant does not seek to defeat the claim on the basis of a lack of performance on the part of the cross-plaintiff. He seeks to defeat the claim by asserting a lack of an obligation to perform on his own part. In each case cited by the cross-plaintiff the defendant has had a continuing obligation to perform. No such obligation is present in the case at bar.

II. The Repudiation of the Lease was Retracted.

The letter of August 5, 1964, in which Walker and Dunlop, acting as agent for Mayfair, requested Luxenberg to vacate on or before October 1, 1964, is not evidence of a repudiation of the contract, for this repudiation was retracted and the lease reaffirmed by the letter of September 10, 1964. Both parties continued to perform under the reaffirmed contract. The defendant continues to affirm his intent to perform under the contract. The power of retraction of a repudiation does not cease to exist until the promisee has materially changed his position in reliance upon the repudiation. 4 Corbin, Contracts #950, pg. 931. The valid retraction not only restores the duty of the other party, thus making the contract enforceable, it also reinstates conditions precedent to the duty of the repudiator, so that performance of such conditions are now once again necessary before Mayfair can be charged with a breach. 4 Corbin, Contracts, 980, pg. 933.

III. Defendant Luxenberg Still has the Power to Perform his Contract.

This Court is well aware that anticipatory breach is not founded only upon the spoken words of the breaching party. Were this so, the right of action would founder ineffectively upon the false or evasive verbiage of the wrongdoer. Anticipatory breach also lies when acts evince an intention to refuse performance in the future. If Mayfair had placed themselves in a position in which performance of their promise would be

impossible, that would be a repudiation of their promise and would have the same legal effect as would a repudiation in words.

In Lovell v. St. Louis Mutual Life Insurance Co. (1884), 111 U.S. 264, 4 S.Ct. 390, 28 L.Ed. 423, the plaintiff had taken out a policy of insurance with the St. Louis Mutual Life Insurance Co. St. Louis Mutual thereafter sold out to the Mound City Life Insurance Company, who took over the entire company. St. Louis no longer sought to continue under the obligation. They had put it out of their power to perform the contract. Both assets and liabilities were transferred to another insurance company.

In White v. Lumiere North American Company (1906), 79 Vt. 206, 64 A. 1121, 6 L.R.A., N.S., 807, the defendant hired the plaintiff to manage a plant for a period of years, and then leased the plant to another company. The court held that that lease made the company powerless to perform their contract with defendant, the contract was breached, and the defendant had no obligation to serve.

In Matthews v. Minnesota Tribune Co., 215 Minn. 369, 10 N.W.2d 230, 147 A.L.R. 147, the employer newspaper company put it out of their power to perform the contract of employment by selling the entire newspaper facility.

In Gaspar v. United Milk Producers of California (1944), 62 Cal.App.2d 546, 144 P.2d 867, the employer put it out of his power to perform the contract by selling his property.

And see Miller v. Schwinn, Inc., 72 App.D.C. 282, 284, 113 F.2d 748, 780; irrevocable dedication of land to Sanitary Commission terminates prior agreement to convey.

Thus, in each case cited the defendant was powerless to perform his contractual obligation. Further, each defendant at the time of trial did not seek to assume the contractual responsibility, but sought to deny his responsibility and affirm the responsibility of the new owner.

In the case at bar, the defendant has not placed it out of his power to perform.

He has not sold his property. The lease with Luxenberg still remains in effect, and Mayfair expresses an intent to continue performance under that lease. The Court recognizes that there are portions of the Grand Union lease which are incompatible with the Luxenberg lease, specifically: 1) the warranty in which Gospel Spreading gives assurance that they have authority to enter into the lease and that they have good and marketable title free and clear of all tenancies [Paragraph 12]; and 2) the provision proscribing the use of the premises as a food supermarket for three years should Grand Union terminate the lease [paragraph 2].

Thus there are now two leases which are in conflict. Since that portion of Luxenberg's lease which concerns this Court is an option, both leases are executory so far as the right to lease the new facility is concerned. At this point, the Court is unable to determine if Mayfair intends to breach with Luxenberg or Grand Union. In his supplemental pleading to this matter, cross-defendant has for the first time indicated that "The Grand Union lease is subordinate to the Luxenberg lease" (Brief filed January 11, 1966, pg. 5).

In order to sustain a claim for anticipatory breach, that breach must be clear. There is no anticipatory breach at this time.

IV. Possible Future Litigation in this Matter.

In so holding, this Court does not intend to condone the Gospel Spreading-Grand Union agreement. At the time that agreement was made, neither Grand Union nor Walker and Dunlop (Gospel Spreading's own agent) were informed of the Luxenberg lease.

This Court will have a continuing interest in this matter. Since the Court has a background of the facts in this case, it is suggested that any future litigation which *may* arise from the lease might be heard by this Court.

Appropriate order to be submitted.