David L. JENSEN, et al., Respondents,

v.

HERCULES, INC., a Delaware
Corporation, et al.,
Appellants.

No. CX–94–744.

Court of Appeals of Minnesota.

Dec. 13, 1994.

Michael Berens, Jeffrey L. Levy, Celeste C. Culberth, Kelly & Berens, P.A., Minneapolis, for appellants.

Richard G. McGee, G. Barry Anderson, Arnold & McDowell, Minneapolis, for respondents.

Considered and decided by DAVIES, P.J., and AMUNDSON and THOREEN,* JJ.

## OPINION

AMUNDSON, Judge.

Appellants argue that the trial court erred in finding them liable for retaliatory discharge of workers' compensation claimants in violation of Minn.Stat. § 176.82 (1988). Appellants also argue that the trial court erred in awarding compensatory and punitive damages. We affirm.

## FACTS

Respondents David L. Jensen, Dale O. Kleinschmidt, Celia N. Whelpley, and Milton E. Kottke are former employees at the Pure Culture Products (PCP) yeast manufacturing plant. The PCP plant is owned by appellant Burns Philp Food, Inc., formerly Fleischmann's Yeast, Inc. (collectively refereed to

hereinafter as Fleischmann's). The plant was purchased by Fleischmann's on December 29, 1989 from appellant Hercules, Inc. Fleischmann's and Hercules are completely separate corporations.

The asset purchase agreement gave Fleischmann's the right to select Hercules' employees who worked in the PCP plant for continued employment after the sale. At Fleischmann's request, Hercules provided reports on PCP employees with workers' compensation claims. At the time of the purchase, only respondents and Reuben Telthoester were on disability leave from PCP and receiving workers' compensation benefits.

Fleischmann's selected the PCP employees it wished to retain. The only PCP employees not selected were respondents and Telthoester. Respondents and Telthoester received termination letters from Hercules on December 29, 1989. Appellants claim that all Hercules employees, including respondents, were terminated at the time of the sale. The employees whom Fleischmann's retained, however, did not receive termination notices nor did they have to complete new job applications. The retained employees were only required to complete payroll and personnel forms. Wages, salaries, seniority and benefits of the retained employees stayed the same.

Fleischmann's states it chose to hire only those former Hercules employees who were available for work during the first two weeks of January 1990. Fleischmann's asserts that it did not hire respondents because respondents were not available for work at the time of the purchase.

Respondents brought claims against appellants asserting that they were terminated in retaliation for asserting workers' compensation claims in violation of Minn.Stat. § 176.82.[1] Following a bench trial, the court agreed and found that respondents had been

---

* Retired Judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment under Minn. Const. art. VI, § 10.

1. Minn.Stat. § 176.82 provides in part:

Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits * * * is liable in a civil action for damages incurred by the employee.

terminated because they filed workers' compensation claims. The trial court awarded respondents a total of $333,577.02 including damages for lost wages and COBRA expenses, emotional distress, punitive damages, and attorney fees and costs. The trial court denied appellants' new trial motion; judgment was entered; and this appeal followed.

## ISSUES

1. Did the trial court err in determining that appellants are liable for retaliatory discharge?

2. Did the district court err in determining compensatory and punitive damages?

## ANALYSIS

### I. *Retaliatory Discharge*

The trial court found that the termination process was a "collaborative effort in which both Fleischmann's and Hercules played an integral part." The court concluded that respondents were discharged "in retaliation for [their] assertion of workers' compensation claims."

■ Findings of fact will not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01. This court will reverse a trial court's findings of fact if, upon review of the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *In re Guardianship of Dawson*, 502 N.W.2d 65, 68 (Minn.App.1993), *pet. for rev. denied* (Minn. Aug. 16, 1993).

■ Whether there has been a retaliatory discharge under Minn.Stat. § 176.82 is a mixed question of law and fact. *See Maxfield v. Maxfield*, 452 N.W.2d 219, 221 (Minn. 1990) (where the trial court is weighing statutory criteria in light of the found basic facts,

the trial court's conclusions will include a determination of mixed questions of law and fact). Court rulings on mixed questions of law and fact are not binding on the appellate court but are subject to independent review. *Meyering v. Wessels*, 383 N.W.2d 670, 672 (Minn.1986).

■ Appellants argue that the trial court erred in treating Fleischmann's and Hercules like a single entity. Appellants assert this case involves two separate acts by two separate companies: (1) Hercules termination of all PCP employees in conjunction with the sale of its PCP assets; and (2) Fleischmann's decision not to rehire respondents for its new business. Accordingly, appellants argue that their actions did not trigger a retaliatory discharge claim under Minn.Stat. § 176.82.[2]

In reality, however, only one transaction is noteworthy in this case: Hercules sale of an ongoing, operating business, including its trained work force to Fleischmann's. Since both Hercules and Fleischmann's conspired to rid themselves of injured workers through this transaction, respondents' workers' compensation claims were a substantial factor in their discharge. *See Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 624 (Minn.1988) (adopting the substantial factor test for wrongful discharge cases). We agree with the reasoning of the trial court, which stated:

> While section 176.82 prohibits any "person" from improperly discharging an employee and does not expressly address the collaborative actions of multiple parties, the Court will not read the statute so narrowly as to permit two employers acting in concert to do what one employer acting alone could not lawfully do.

Section 176.82 must be interpreted to apply to employees discharged during the sale

---

**2.** Appellants cite to *Matthews v. Minnesota Tribune Co.*, 215 Minn. 369, 10 N.W.2d 230 (1943) for the proposition that when an employer sells the assets of a business, it discharges all employees, and the buyer rehires them. *Matthews*, however, is distinguishable. In *Matthews*, the court held that the rehired employees were entitled to

severance pay under an employment contract. *Id.* 10 N.W.2d at 231. The decision only applied to a narrow class of employment contracts with broad severance pay provisions; it cannot be construed to stand for the proposition that an asset sale ends the employer/employee relationship in all cases.

of a business in order "to assure the quick and efficient delivery of indemnity and medical benefits to injured workers." *See* Minn. Stat. § 176.001 (1988). This statutory purpose cannot be achieved if companies can succeed in discharging workers' compensation claimants whenever they happen to sell the business. The threat that a workers' compensation claimant will be discharged if the business is sold could have a chilling effect on the filing of claims.

The transfer of the employees between Hercules and Fleischmann's was an integral part of the transfer of the business; the trained employees significantly affected the value of the business. Appellants must transfer the human resource liabilities and assets together. They cannot cast off the likely higher cost of health insurance and the cost of accommodating permanent disabilities in the work place simply by selling the business.

Therefore, we hold that the trial court did not err in determining that both Fleischmann's and Hercules are liable for retaliatory discharge.

## II. *Damages*

■ Appellants argue that the trial court erred in awarding respondents wage loss, emotional distress, and punitive damages. We disagree.

■ A reviewing court will not disturb a damage award unless its failure to do so would be "shocking or would result in plain injustice." *Hughes v. Sinclair Mktg., Inc.,* 389 N.W.2d 194, 199 (Minn.1986).

### A. Wage Loss Damages

Hercules asserts that it cannot be liable for any damages past December 31, 1989 because it no longer continued to employ any workers at the PCP plant. Fleischmann's also argues that it is not liable for damages because respondents cannot prove any damages for its failure to hire them.

As we have already determined, however, both Hercules and Fleischmann's collaborat-

ed in discharging respondents in retaliation for filing workers' compensation claims. Thus, under the clear language of section 176.82, respondents have a claim for damages against both parties.

Appellants further argue that the trial court erred in awarding respondent Whelpley wage loss damages for 1990. The dismissal benefit received by Whelpley, however, is not a substitute for her salary. Therefore, the trial court did not err in awarding Whelpley wage loss damages for 1990.

### B. Emotional Distress Damages

Appellants argue that respondents are not entitled to emotional distress damages as a matter of law. While appellants correctly note that section 176.82 does not expressly provide for emotional distress damages, it also does not exclude such damages. This court has previously held that emotional distress damages are recoverable under section 176.82. *See Flaherty v. Lindsay,* 457 N.W.2d 771, 774 (Minn.App.1991), *rev'd on other grounds,* 467 N.W.2d 30 (Minn.1991). We find no compelling reason to depart from this precedent.

### C. Punitive Damages

■ Appellants argue that the trial court erred in awarding $140,000 in punitive damages because respondents did not prove cruel and venal conduct by clear and convincing evidence.

Section 176.82 provides that "punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled" may be awarded if an employer discharges an employee for seeking workers' compensation benefits. Thus, a violation of section 176.82 triggers a possible award of punitive damages.

Our review would have been aided had the trial court made more explicit findings regarding its basis for awarding punitive damages. Nevertheless, our review of the court's memorandum and the facts of this case indi-

cate that the court correctly applied the proper standards. The court clearly noted that Hercules and Fleischmann's "conspired" to deprive respondents of their jobs in contravention of Minnesota law. Therefore, we conclude the trial court did not err in determining that respondents were entitled to punitive damages.

■ Appellants also argue that the trial court erred in determining the amount of punitive damages. A decision on the amount of punitive damages lies almost exclusively within the province of the fact finder and will not be disturbed on appeal unless it is so excessive as to be unreasonable. *Jones v. Liberty Mut. Ins.*, 474 N.W.2d 18, 20 (Minn. App.1991), *pet. for rev. denied* (Minn. Oct. 11, 1991).

Specifically, appellants claim that the court exceeded the treble damages limitation in section 176.82. Section 176.82, however, authorizes treble damages not to exceed "any" compensation benefit. Applying this standard, the multiple damage award of $35,000 to each respondent was well below the statutory limit. Therefore, we conclude the trial court did not abuse its discretion in determining the amount of punitive damages.

### DECISION

The trial court did not err in determining that appellants are liable for retaliatory discharge. Additionally, the court did not err in determining compensatory and punitive damages.

**Affirmed.**