# LANDVOIGT *v.* PAUL.

### CONTRACTS; PAROL EVIDENCE; APPELLATE PRACTICE.

1. A contract may be broken by a renunciation of liability under it in the course of performance, and suit may be immediately instituted, and, if a contract provides for a series of acts, and actual default is made in the performance of one of them, accompanied by a refusal to perform the rest, the other party need not perform, but may treat the refusal as a breach of the entire contract, and recover accordingly.

2. The declaration by a promisor of an intention not to perform is not of itself, and unless acted on by the promisee, a breach of the contract; and it only becomes such when it is converted, by force of what follows it, into a wrongful renunciation of the contract.

3. A paper supplementary to a contract in writing, signed by one of the parties to the contract, to the effect that the other party's rights shall remain the same, notwithstanding a delay in the performance of the contract, cannot properly be said to be a new contract superseding the original one, but is rather the mere admission of a contract by one of the parties.

4. While, in a contract whereby one of the parties agrees to purchase and the other agrees to sell, the stipulations are dependent, and ordinarily a tender and refusal of the purchase money must be proved before the purchaser can claim damages for a breach of the contract to convey, the refusal of the seller to accept performance of the contract makes a tender unnecessary. (Following *Newman* v. *Baker*, 10 App. D. C. 187.)

5. Where a written contract for the purchase and sale of lots and the erection of buildings thereon is silent as to the price of the lots and the character of the buildings to be erected, documentary and oral evidence is admissible in a suit by one of the parties against the other for a breach, to show the price of the lots and the character of the buildings to be erected.

6. A question cannot be considered on appeal which is not presented by the record.

No. 1624. Submitted February 21, 1906. Decided May 1, 1906.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, upon a verdict directed by the court, in an action upon a contract.

*Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Charles Poe* and *Mr. Samuel A. Putman* for the appellant.

*Mr. Charles L. Frailey* and *Mr. A. S. Worthington* for the appellee.

Mr. Justice McCOMAS delivered the opinion of the Court:

The appellant, Edward Landvoigt, plaintiff below, instituted suit to recover damages from the appellee, Joseph Paul, defendant below, for the breach of a written contract.

In our opinion the one or more counts in the declaration were sufficient statements of the appellant's cause of action. The appellee pleaded the general issue and at the conclusion of the plaintiff's case, the court below directed a verdict for the defendant and entered judgment thereon, from which the plaintiff below appealed.

The appellant was a contractor and builder, and the appellee, the owner of unimproved lots called "Dobbins's addition to Washington." On May 24th the appellee subdivided a portion of this property, beginning at the northwest corner of First and V streets and extending along First street to W street, and on the next day the appellee wrote the following letter, which was in evidence, to the terms of which on the same day the appellant agreed in writing:

Washington, D. C., May 25, 1897.

Mr. Edward Landvoigt:

Dear Sir:—

If you should complete the construction of five (5) dwellings, proposed to be built by you on five (5) lots 19.87 by 90 feet,

at the northwest corner of First and V streets northwest, according to plans and specifications to be approved by me, by the 1st of October, 1897, I agree to sell you, on or before December 1, 1897, five lots of 19.86 by 90 feet, adjoining said dwellings on the north, for the sum of Five Hundred Dollars each, provided you begin on or before December 1, 1897, the erection of five (5) dwellings thereon of similar construction, or others according to plans and specifications to be approved by me, and complete said dwellings with proper despatch. If said additional five dwellings are completed by April 1, 1898, I will sell you on or before April 1, 1898, five (5) lots 19.87 by 90 feet adjoining said last five (5) dwellings on the north for the sum of Five Hundred Dollars each, provided you begin, on or before April 1, 1898, the erection of five (5) dwellings thereon of similar construction, or others according to plans and specifications to be approved by me, and complete the same with proper despatch.

This offer is made with the distinct understanding and agreement on your part that this letter or proposal shall not be recorded in the office of the recorder of deeds of the District of Columbia.                    Yours truly,

                        Joseph Paul, *Agent.*
Executed in duplicate.

I accept and agree to the above condition that this paper shall not be offered for record in the office of the recorder of deeds of the District of Columbia.                    Edw. Landvoigt.

Witness as to both:
    F. E. Gibson.

Architects prepared for the appellant plans and specifications for 15 dwellings to be erected upon said 15 lots. The book showing the subdivision of the property was in evidence, and the appellant testified that he made his arrangements to erect a dwelling on each of the 15 lots and for the purchase of materials and supplies therefor.

The appellant paid the appellee in cash $1,000, being $200 on account of the purchase money, $500, for each of the 5 lots of ground first mentioned in this contract. On the day the contract was made, in addition to the cash payment, to secure the balance of the purchase money, and subsequent to the lien of deeds of trust which the appellant gave to secure the builders' loan upon each of the first group of 5 dwellings, the appellant executed upon each of the first 5 lots separate deeds of trust, each securing to the appellant $300 of the purchase money upon each of said lots. The contract was silent as to the mode and time of paying the deferred purchase money; but this contemporaneous transaction made this matter definite. Subsequently the appellee extended the time of completion of the first 5 dwellings until October 31st, 1897. They were finished and accepted by the appellee about the middle of October. During that month both parties applied to Arms and Drury for a building loan aggregating $41,000 wherewith to construct 10 dwellings upon the remaining 10 lots mentioned in the contract, the loan to be secured by 9 deeds of trust for $4,000 each, and 1 for $5,000 on the remaining 10 lots. At the joint request of appellant and appellee, the notes and deeds of trust were, under the direction of Arms and Drury, prepared, and all parties agreed to execute them on the 1st day of November, 1897, and all parties having agreed it would be better to build the 10 dwellings at once. On that day all the parties met at the office of Arms and Drury. When the appellant and his wife were about to sign the deeds of trust which were to secure the building loan, he was checked by the appellee, who stated he was not then ready to convey the ground to the appellant. Repeatedly thereafter the appellant sought in vain to have the appellee convey the lots and perfect the arrangements before mentioned. The appellee steadily refused, assigning various reasons. The appellant made final demand on November 10th, 1898, and the appellee then finally refused to convey the remaining 10 lots, saying that "said property was for sale, and that he (the appellee) wanted 75 cents per foot from me (the appellant) or anybody else." It appears that soon after the abortive meeting on November 1st, 1897, the appellant went to

see the appellee, who stated that they had better wait until they had gotten an electric railway line out toward the property, the appellee saying: "No, you don't want to be hasty about this thing. We had better wait. We are going to build 10 of them together anyhow. You had better wait until they get that line out there."

The appellee never based his refusal to convey upon the ground that appellant requested him to convey 10 lots at one time, instead of 5 lots at first and thereafter 5 lots more. Among other things, the appellant said: "I can get my loan now, and later on I may not." The appellee replied: "I think I know what is best for you in this case." The appellant said: "How about this property then? You ought to give me a writing if there is going to be a delay of this kind." The appellee gave him a brief writing, which was lost. The appellant stated such writing said that appellee would deliver to appellant 10 lots at the same price and on the same terms as in the first contract, namely, $500 for the lot, $200 in cash, and $300 on a second trust after the lien for the builder's loan; that, under the supplementary paper, the appellant was to build the same kind of dwellings he had built. "It was the same as the first contract; it was only simply that there would be no change." The appellee still argued against building at that time, and the appellant argued for it, and then it was appellant told appellee to give him a writing to the effect that there would be no change because appellee insisted upon delay in the building operations. When the appellant made his final demand, he had money to carry out his contract, as he had had the money before. He had also secured Mr. Ross to urge appellee to carry out the agreement, and Ross told the appellee he was ready to back the appellant in this matter, and had arranged to sell him material for 15 dwellings. Ross told appellee that appellant had sold 2 houses before they were completed; that material was cheap, and appellant wanted to go on.

On November 9th, 1898, the appellant sent Kimmel with the supplementary paper and $500 in cash to give appellee, offering to pay in a few days the balance of $5,000 as cash payment of purchase money for the 10 lots, but the appellee declined,

and said he would not sell those lots to appellant except at 75 cents a foot.

Caverly, the employee of Arms and Drury who had prepared the papers, was present when the appellee checked the execution of the papers, and testified that both parties to this suit then spoke to Mr. Arms about making the loan and getting the money in the spring; and Arms also testified that both men spoke to him after the failure to execute the papers, and dwelt upon the lateness of the season.

This suit was instituted on July 2d, 1900.

In our opinion the learned court below erred in instructing the jury to return a verdict for the appellee. By the contract the appellant agreed to build upon the 15 lots three groups of 5 dwellings each. The first group was completed and accepted by the appellee within time satisfactory to him, and the appellee agreed to sell the appellant, on or before December 1st, 1897, 5 lots additional, provided appellant began, on or before that date, the erection of 5 similar dwellings; and, if the 5 additional dwellings were completed by April 1st, 1898, the appellee agreed to sell appellant on or before April 1st, 1898, 5 more lots, provided he began, on or before that date, the erection of 5 similar dwellings.

It appears that about November 1st, 1897, both parties proceeded to carry out this contract, and that they had determined that it was best that the 10 dwellings should be built at once. The appellant was ready and able to proceed to build 5 or 10. Suddenly the appellee declined to go forward in the performance of his part of the contract, either as to 5 or 10 lots. He sought delay upon various pretexts, and soon refused absolutely to carry out the contract, but offered to sell the 10 lots to the appellant at 75 cents per foot, a much higher price than that agreed on. The appellant was entitled to sue the appellee for damages for breach of the contract long before this suit was instituted.

The evidence in the record shows no change in the terms of the contract, but by consent of both parties a variation in the details of performance only, and thereafter an absolute refusal by the appellee to perform the contract, either as to the second or third group of lots, and on the sole ground that the appellee

was no longer willing to part with the lots at the price agreed on. All the while it appears that the appellant was able, ready, and willing to carry out the contract according to its terms, or according to the unimportant variation of mode of performance to which the proof shows both parties were agreed. The Supreme Court has said that a contract may be broken by a renunciation of liability under it in the course of performance, and suit may be immediately instituted; and that, if a contract provides for a series of acts, and actual default is made in the performance of one of them, accompanied by a refusal to perform the rest, the other party need not perform, but may treat the refusal as a breach of the entire contract, and recover accordingly.

Upon the proof in this case, the appellant has completed satisfactorily to the appellee the first 5 dwellings; the dwellings have been accepted and those lots conveyed. He was ready to make the cash payments upon the lots, and to secure the deferred purchase money after the builder's loan, which builder's loan, according to the interpretation of both parties to this contract, it was arranged should intervene. The appellee, who was active in securing the first builder's loan, participated with the appellant in securing the second, and on November 1st, 1897, the proof shows the appellant was ready, willing, and able to begin, before December 1st of that year, the erection of not only the second group of 5 dwellings, but the third group of 5 dwellings. When the appellee refused to convey the second 5 lots in the same manner he had conveyed the first 5 lots, the appellant was powerless to proceed. He importuned the appellee to permit him to perform his part of the contract. By his agent, on November 9th, 1898, he offered to pay $500 in cash and $4,500 more in cash within a few days to pay for the 10 lots, and the appellee again refused, and demanded 75 cents a foot. He placed his refusal entirely upon his unwillingness to convey the lots for the same price. In *Roehm* v. *Horst,* 178 U. S. 1, 13, 15, 44 L. ed. 953, 958, 959, 20 Sup. Ct. Rep. 780, it is said: " 'We have, therefore, to consider upon what principles and under what circumstances it must be held that a promisee, who finds himself confronted with a declaration of

intention by the promisor not to carry out the contract when the time for performance arrives may treat the contract as broken, and sue for a breach thereof. It would seem, on principle, that the declaration of such intention by the promisor is not in itself, and unless acted on by the promisee, a breach of the contract; and that it only becomes a breach when it is converted by force of what follows it into a wrongful renunciation of the contract. Its real operation appears to be to give the promisee the right of electing either to treat the declaration as *brutum fulmen,* and holding fast to the contract, to wait till the time for its performance has arrived, or to act upon it, and treat it as a final assertion by the promisor that he is no longer bound by the contract, and a wrongful renunciation of the contractual relation into which he has entered. But such declaration only becomes a wrongful act if the promisee elects to treat it as such. If he does so elect, it becomes a breach of contract, and he can recover upon it as such,' * * * In *Anvil Min. Co.* v. *Humble,* 153 U. S. 540, 38 L. ed. 814, 14 Sup. Ct. Rep. 876, performance had been commenced, but completion was prevented by defendant, and Mr. Justice Brewer, speaking for the court, said: 'Whenever one party thereto is guilty of such a breach as is here attributed to the defendant, the other party is at liberty to treat the contract as broken, and desist from any further effort on his part to perform; in other words, he may abandon it, and recover as damages the profits which he would have received through full performance. Such an abandonment is not technically a rescission of the contract, but is merely an acceptance of the situation which the wrongdoing of the other party has brought about.' "

In the case we are considering the appellant waited until all time stipulated by the contract for performance had passed, and again made demand, and appellee again refused, and again offered to sell the lots to the appellant at the higher price.

We do not agree with the learned court below that the brief paper signed by the appellee—the paper which was lost and the contents of which were proved—was a new contract. The proof of its terms and all the circumstances under which it was made show it was in every material respect, by the appellee who alone

signed, an affirmance of the written contract in evidence. In the language of the appellant, who testified as to its contents, it assured him he would obtain at a time which does not appear definitely the same 10 lots, at the same price, on the same terms, and the deferred payments to be subsequent to the like builder's loan, the appellant to build dwellings like those described in the original contract approved by the appellee. In the language of the witness: *It made no change in the original contract. It was the same as his first contract.* The learned court below erred in calling this a new contract. This writing was not the contract of both parties; it was the admission of one. "It is clearly a case of voluntary waiting, and not of alteration in the contract; and the length of time can make no difference. \* \* \* At no time was there any binding contract on the plaintiff to wait, and the defendant remained all along in default." *Ogle* v. *Vane,* L. R. 2 Q. B. 283, 284, Affirmed in L. R. 3 Q. B. 279.

We observed that this brief paper was signed only by the appellee. There was no rescission of the former contract. It may be conceded, as the appellee contends, that by the terms of the contract the appellee was not bound to convey on November 1st, 1897, but the evidence is that he refused then to convey, and, by the brief paper described, on November 2d, manifested his wish for delay; but there is no evidence the appellant assented to any definite time of delay, and there is abundant evidence that he repeatedly, during the year ensuing, demanded performance, that the appellee repeatedly refused, and on November 10th, 1898, finally and absolutely refused to perform. At no time did the appellee express willingness to perform his contract as to 5 lots on December 1st, 1897, and as to 5 lots on April 1st, 1898. It is true the appellant did not begin to build the second 5 dwellings on or before the 1st day of December, 1897; the refusal of the appellee made it impossible for the appellant to begin; but the evidence shows that he was ready, and willing, and able to begin.

Again, it is said the appellee was not bound to convey any more lots to the appellant until the appellant had tendered so much of the purchase money as had been agreed upon. The

evidence is that he was ready and able to carry out his agreement. He was required to pay $1,000 in cash, and the evidence is he had $5,000 or more in bank, and he was present with his wife to perfect the liens for the builder's loan and for the deferred purchase money. It is true in such a contract the stipulations are dependent, and ordinarily a tender and refusal of the purchase money must be proved before the complainant can claim damages for a breach of contract to convey. As was said in *Newman* v. *Baker,* 10 App. D. C. 187: "The appellant could have averred that he was ready and willing, and offered, to perform his part, but was discharged by the appellee, and could then have maintained his action without proving a tender." So in this case the appellee refused at that time and at all times to perform his part of the contract, and the appellant was relieved from doing a vain thing. The appellee's refusal made a tender unnecessary. The appellant was ready not only to pay the cash payments of purchase money and to secure the rest, but was ready, on or before December 1st, 1897, to begin the construction of the second group of 5 houses, and also the third group. The record surely means so much. Upon the narrowest view of the evidence, it shows the appellant ready, willing, and able to carry out his part of the contract respecting the second group of houses, and the breach of the contract by the appellee in respect of that part of his contract fully supports the count in the declaration relating thereto. It is true the appellee was not bound to convey the second group of lots on November 1st, but continuously from that time forward he refused to convey these lots, and finally, about one year later, he refused to convey them at the price agreed on and offered to sell the same lots to the appellant at a higher price. In this case the original contract in writing was not a note or memorandum of the antecedent parol agreement, but only a part of it.

The deeds of trust, and checks, and plans, and parol evidence were properly admitted to show the price of the lots and the character of the buildings. Thus the price was ascertained to be $500 for each lot. "If the writing offered in evidence contains no reference to the price at which the goods were sold,

parol evidence is admissible to prove that a price was actually fixed, and the writing is thus shown not to be a note of the agreement, but only of some of its terms." Benjamin, Sales, 1892, Bennett's 6th ed. p. 174.

The case we have considered is the plaintiff's case as presented, and the court, at the conclusion of the plaintiff's case, directed the jury to return a verdict for the appellee, and in so doing committed error.

The case will be remanded, and, if the record enabled us to consider the measure of damages, it would be proper to discuss it, but, when counsel asked the appellant how much it cost him to build each of the houses he had erected, the court checked further inquiry. The appellant made no proffer of evidence respecting damages, and we cannot consider this question, which is not presented in the record.

The judgment must be reversed with costs, and this case remanded for further proceedings not inconsistent with this opinion, and it is so ordered.                          *Reversed.*