## FRIEDMAN v. DECATUR CORPORATION.
### No. 8066.

United States Court of Appeals for the
District of Columbia.

Decided April 12, 1943.

the property is not made available for industrial use or in the event the Party of the Second Part [appellee] is unable to obtain wharfage facilities and the privilege of running a pipe line from said wharf to the property aforesaid." Appellee sued appellant on this contract, and recovered judgment. Appellant's main contention on this appeal—that the court erred in refusing to grant his motion for a directed verdict—presents the issue, whether the quoted language constituted the agreement a unilateral contract, of which complete performance, and a tender by appellee, was necessary in order to bind appellant. He says the contract imposed no obligation upon appellee to bring about the contingencies upon which performance by appellant was dependent; that it imposed no time limit within which these contingencies had to occur; that it attempted to bind appellant, while leaving appellee free to proceed with performance or to repudiate the agreement; that appellee never did complete performance or make the necessary tender; hence, that appellant was under no obligation to buy the property.

Appellee contends that this proposition was not presented to the trial court as a ground for the motion [1] or otherwise; that under the rule it is presumed to have been waived;[2] that errors claimed to have been committed in a trial court, concerning questions not presented to that court for its consideration, will not be reviewed on appeal.[3] The record fails to reveal any specification concerning unilateral contracts as a ground for the motion for directed verdict. There was some argument concerning lack of obligation upon appellee's part; but the specification finally stated by appellant was: "* * * that this count does not allege any breach and does not show any tender, and that the plaintiff has not shown by the testimony certain means of performance." Appellee's contention, therefore, seems to be well founded.

Mr. Alfred M. Schwartz, of Washington, D. C., for appellant.

Mr. Warren E. Magee, of Washington, D. C., with whom Mr. Arthur R. Murphy, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

By contract of May 31, 1935, appellee agreed to sell, and appellant agreed to buy, certain real estate situated in the District of Columbia. The contract was in the common form of an agreement, to buy and sell for a price stated, except that it contained the following sentence: "This agreement to be null and void in the event

---

[1] Fed.Rules Civ.Proc. Rule 50(a), 28 U. S.C.A. following section 723c: "A motion for a directed verdict shall state the specific grounds therefor."

[2] Rules Civ.Proc., U.S.Dist.Ct., Dist. of Columbia (1938), Rule 19: "All grounds for motions not stated in a motion or notice of motion or in the margin thereof shall be regarded as waived, unless for cause shown the court shall otherwise order."

[3] Cooper v. Sillers, 30 App.D.C. 567, 573, 574; Cohen. v. Cohen, 47 App.D.C. 129, 133; Hormel v. Helvering, 312 U. S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037; Becker Steel Co. of America v. Cummings, 296 U.S. 74, 80, 56 S.Ct. 15, 80 L.Ed. 54; Virtue v. Creamery Package Mfg. Co., 227 U.S. 8, 38, 33 S.Ct. 202, 57 L.Ed. 393. See Gen'l Rules, U.S.Ct.App.D.C., Rule 17(i).

But, even assuming that appellant were privileged to present the question on this appeal, he has misconceived the applicable law. The disputed contract contains a mutual exchange of promises between the two parties; hence is bilateral in character.[4] The provision that the agreement should be null and void, in event the property were not made available for industrial use with wharfage facilities and pipe line privilege, was a condition precedent.[5] The fact that no duty of performance can arise until the happening of such a condition does not make the validity of the contract depend upon its happening. Each party was irrevocably bound from the outset.[6] In the present case, since the condition was for the benefit of appellant, he could, if he wished, have waived it and insisted upon transfer of the land.[7] "Null and void" here means only voidable at the buyer's option. To that extent, at least, appellee was obligated—a sufficient obligation to satisfy the requirement of mutuality of obligation[8] upon which the bilateral character of the contract depends.

Appellant contends, in the alternative, that, even if the agreement is construed to be a bilateral contract, nevertheless, appellee was not entitled to recover unless he had performed the condition. It is true, as a general rule, that such a condition must be exactly fulfilled, or no liability can arise on the promise which it qualifies.[9] But this is subject to the exception that, if performance of the condition is excused, the promise becomes enforceable.[10] Such an excuse may be found from the fact that, even had the promisee performed the condition, the promisor would, nevertheless, have failed to carry out his promise.[11]

The record in the present case shows that there was such an anticipatory breach. Between May 31 and the following September, appellee had made considerable progress in satisfying the conditions precedent. It had obtained a rezoning of the property to permit industrial use, and had procured the enactment of legislation which authorized the Commissioners of the District to permit the laying of pipe lines for the carriage of petroleum products from the property to the pierhead line of the Anacostia River. It had not yet obtained wharfage facilities. In September, 1935, appellee inquired of appellant concerning the type of wharf which he desired, and the desired location of the pipe lines. It suggested that the necessary applications should be submitted to secure permits for the wharf and pipe lines. Appellant then

---

[4] Restatement, Contracts (1932) § 2: "(1) A promise is an undertaking, however expressed, either that something shall happen, or that something shall not happen, in the future."
Id. § 12: "A unilateral contract is one in which no promisor receives a promise as consideration for his promise. A bilateral contract is one in which there are mutual promises between two parties to the contract; each party being both a promisor and a promisee."
Id. § 31: "In case of doubt it is presumed that an offer invites the formation of a bilateral contract by an acceptance amounting in effect to a promise by the offeree to perform what the offer requests, rather than the formation of one or more unilateral contracts by actual performance on the part of the offeree."

[5] City of New Orleans v. Texas & P. R. Co., 171 U.S. 312, 334, 18 S.Ct. 875, 43 L.Ed. 178; Southern Surety Co. v. MacMillan Co., 10 Cir., 58 F.2d 541, 547, certiorari denied 287 U.S. 617, 53 S.Ct. 18, 77 L.Ed. 536; 3 Williston, Contracts, (Rev. Ed. 1936), § 666A.

[6] 3 Williston, Contracts (Rev. Ed. 1936) § 666; Hurt v. New York Life Ins. Co., 10 Cir., 51 F.2d 936, 938–939.

[7] 3 Williston, Contracts (Rev. Ed. 1936) §§ 678, 679, 689, 690; Restatement, Contracts (1932), §§ 88, 297. See District of Columbia v. Camden Iron Works, 181 U.S. 453, 464, 21 S.Ct. 680, 45 L.Ed. 948; Jones v. United States, 96 U.S. 24, 28, 24 L.Ed. 644. Cf. 3 Williston, Contracts (Rev. Ed. 1936) § 746, and cases there cited.

[8] Restatement, Contracts (1932) § 81; 1 Williston, Contracts (Rev. Ed. 1936) § 115. See Lawrence v. McCalmont, 2 How. 426, 452, 11 L.Ed. 326; Davis v. Wells, 104 U.S. 159, 167, 26 L.Ed. 686; Guffey v. Smith, 237 U.S. 101, 116, 117, 35 S.Ct. 526, 59 L.Ed. 856.

[9] 3 Williston, Contracts (Rev. Ed. 1936) § 675; Restatement, Contracts (1932) § 250; Portuguese-American Bank v. Welles, 242 U.S. 7, 11, 37 S.Ct. 3, 61 L.Ed. 116, Ann.Cas.1918D, 643.

[10] 3 Williston, Contracts (Rev. Ed. 1936) § 676; Restatement, Contracts (1932) §§ 294, 306.

[11] Miller v. Schwinn, 72 App.D.C. 282, 284, 113 F.2d 748, 750; Roehm v. Horst, 178 U.S. 1, 13, 20 S.Ct. 780, 44 L.Ed. 953; Landvoigt v. Paul, 27 App.D.C. 423, 432; Sheffield v. Paul T. Stone, Inc., 68 App.D.C. 378, 98 F.2d 250.

revealed that he did not intend to go through with the contract until he had worked out a deal with an oil company; and requested that appellee hold up the further performance of the contract and the submission of applications for permits. In January, 1936, appellant advised that his deal with the oil company had not gone through, and that his performance of the contract looked rather hopeless. Early in February, appellant informed appellee that, as his deal with the oil company had not gone through, he could not, and would not, go through with his contract of May 31, 1935. This was clearly sufficient to bring the case within the exception to the general rule, because of excuse resulting from an anticipatory breach.

Appellant contends that, even assuming an anticipatory breach, nevertheless, appellee should not recover, because of failure to show that it was able, ready and willing to perform. He says, in support of this contention, that appellee was unable to deliver either good title or wharfage facilities. This issue was submitted, by the court to the jury, in express terms. It instructed, further, that the burden was on appellee to prove these and other essential elements of its case. Specifically, upon the propositions urged by appellant, the court instructed as follows: "You will recall that the contract provided that it should be null and void in the event The Decatur Corporation was unable to obtain wharfage facilities. In the construction of a contract the intention of the parties is to prevail, and in ascertaining this intention the language is to be given its plain and ordinary meaning. Giving that contract its plain and ordinary meaning and considering all the provisions of the contract there still remains an ambiguity as to what was intended by the parties by the term wharfage facilities. Accordingly I have permitted evidence to be received showing that it was the intention of the parties that the wharfage facilities referred to in the contract were those incident to the mooring of the vessels transporting petroleum or its products at a wharf to be erected and the discharge of its cargo at the wharf and thence into a pipeline for delivery to storage tanks of such products to be erected on the land. Therefore, in determining whether The Decatur Corporation was able to obtain wharfage facilities you will understand the term as I have just defined it to you. Apparently from the evidence these wharfage facilities which the plaintiff contends it was able to obtain were at a point at the foot of Fifteenth Street. To obtain them required a permit from the War Department to construct a wharf and the lease of part of the mainland at the foot of Fifteenth Street adjoining the proposed wharf. Of course, as in the case of the most convincing proof of ability to obtain wharfage facilities is to obtain them [sic]; but, as in the case of the pipeline permission, the obtaining of the wharfage facilities was not accomplished but the plaintiff has offered testimony, which I say is disputed by the defendant, that it did not go through with the matter because the defendant notified the plaintiff that he would not or could not go through with the contract. The question therefore for you to determine is whether under the evidence. The Decatur Corporation reached a point in its negotiations with the War Department from which it could be concluded that it had certain means of obtaining a permit to construct a wharf and a lease of part of the mainland on Fifteenth Street, adjoining the proposed wharf and did not proceed further because of the statement of the defendant, if you find that he made it, that he could not or would not go through with the contract. If you find that the plaintiff has established these facts by a fair preponderance of the evidence, you will proceed to the next question, which I shall take up with you. If you find that he has not, you will find for the defendant and bring in a verdict for the defendant accordingly. If you find for the plaintiff on this question you will proceed to take up the question of whether the plaintiff was able to deliver good title to the land plaintiff agreed to convey. Good title to the land means marketable title, that is, a title which a reasonably prudent person would buy free of encumbrances and free of restrictions and conditions. As regards the property owned by the railroad company, it is necessary for the plaintiff to show that the railroad company, acting through its duly authorized officers, was ready, able, and willing, to convey good title to such land free of encumbrances and free of conditions and restrictions, free of conditions as to seepage, and free of conditions with respect to later [sic] support, and that you must also find that the plaintiff was able to pay the purchase price therefor, purchase it from the railroad or, in other words, that the plaintiff had certain means

**816**

of acquiring the railroad property free and clear of the conditions I have enumerated. If you find by a fair preponderance of the evidence that the plaintiff was so ready, able and willing, to convey all the property called for by the contract and give therefor a good marketable title free and clear of encumbrances and free and clear of conditions and restrictions of all the land contemplated by the contract, you will find for the plaintiff and proceed to the next question; otherwise you will find for the defendant and bring in a verdict for the defendant."

The verdict of a jury, like the findings of a judge who tries a case without a jury, constitutes a final determination of disputed facts, where the evidence is of such character that intelligent persons may honestly differ as to what was actually proved.[12] We are satisfied that the evidence was sufficient to support the verdict, and that the trial court acted clearly within the scope of its authority and discretion in refusing to direct a verdict.

What appellant's contention boils down to—concerning the matter of wharfage facilities—is that, to secure them, it was necessary to secure the exercise of discretion by certain executive officers. It concedes that steps had been taken in that direction, including the procuring of "pipeline legislation" and the writing of letters to the War Department and to the National Capital Park and Planning Commission. The evidence introduced by appellee indicated that it went much farther than was conceded by appellant. That it did not go farther still was due to appellant's failure to file his application for a permit for a wharf, and to his anticipatory breach, which cut off all pending negotiations in his behalf, then under way. Appellant's contention concerning the ability of appellee to deliver good title was equally tenuous, and the jury was entirely justified in finding against him upon the evidence.

We have examined appellant's other contentions and find them to be without merit.

Affirmed.

[12] George v. Capital Traction Co., 54 App.D.C. 144, 147, 295 F. 965, 968.