**UNITED STATES of America,**
**Appellant,**

v.

**BUFFALO COAL MINING COMPANY,**
**Inc., et al., Appellees.**

**BUFFALO COAL MINING COMPANY,**
**Inc., et al., Cross-Appellants,**

v.

**UNITED STATES of America,**
**Cross-Appellee.**

**No. 19206.**

United States Court of Appeals
Ninth Circuit.

Feb. 19, 1965.

Rehearing Denied May 7, 1965.

See 345 F.2d 517.

John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, Max Wild, Attys., Dept. of Justice, Washington, D. C., Warren C. Colver, U. S. Atty., Anchorage, Alaska, for appellant and cross-appellee.

Richard O. Gantz, Anchorage, Alaska, for appellees and cross-appellants.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

These appeals concern the liability of Buffalo Coal Mining Company, and two of its shareholders, on a promissory note executed by Buffalo to Reconstruction Finance Corporation, an agency of the United States.

During World War II the United States Army seized Buffalo's coal mine near Palmer, Alaska and commenced making substantial physical changes in the property for the purpose of increasing production. Before the project was finished, the war ended and the army returned the property to Buffalo, but in an inoperable condition. Buffalo lacked money to complete the work and was unable to borrow it. All activity ceased and the mine became flooded.

Some years later Buell A. Nesbett, together with several other individuals, became interested in the mine. Upon investigating, they concluded that, with production of not less than 400 tons of coal per day, the mine could be profitably operated; that the cost of completing the Army's unfinished work and rendering the mine capable of such production would be about $400,000, and that a loan in that amount could be secured from RFC. They acquired control of Buffalo and made Nesbett president. After considerable negotiating he succeeded in securing RFC's commitment to loan Buffalo $425,775. To evidence the loan and secure payment, Buffalo executed its note in that amount and a chattel mortgage to RFC. As further security Nesbett and W. T. Malcolm, another of Buffalo's shareholders, each "unconditionally" guaranteed payment of the note. The guarantees were in writing and limited the amount of Nesbett's liability to $30,000 and that of Malcolm to $20,000.

Buffalo immediately began construction, paying expenses with moneys advanced by RFC from time to time against the loan. When the work was well under way and a large portion of the loan was spent, Buffalo encountered an unexpected ground condition that necessitated a major revision of its plans, and indicated a considerably greater outlay of money than Buffalo had expected or anticipated. Buffalo then applied to RFC for an additional loan of $208,329.33. The application contained a detailed progress report, together with an itemized statement of expenditures to date; it described the difficulties recently encountered and the nature of the required changes in plan, and it set out Buffalo's estimate that the remainder of the present loan, plus the additional $208,329.33, would cover the cost of making the mine operable. RFC rejected the application. Moreover, RFC refused to disburse all remaining portions of the loan except for $60,000 to keep the mine "unwatered." Afterward, Buffalo failed to meet several installment payments on the note. RFC declared a default and, invoking the acceleration clause in the note, declared the full amount of the loan immediately due. Payment was refused. The United States then commenced this suit in the district court to recover judgment against Buffalo and foreclose the mortgage. It also sought judgment against Nesbett and Malcolm in the amount of their respective guarantees.[1] Buffalo filed a counterclaim

---

1. The guarantees were unconditional and constituted guarantees of payment rather than collection. 24 Am.Jur. Guaranty, § 17. Accordingly, the guarantees could

for breach of contract based upon RFC's refusal to perform its loan agreement. The district court had jurisdiction of the controversy under 28 U.S.C. § 1345.

Following a trial, the district judge, sitting without a jury, decided that the United States was entitled to recover on its claim against Buffalo, but not on its claims against Nesbett and Malcolm. It further decided that Buffalo's counterclaim should be dismissed. Both Buffalo and the United States have appealed from the ensuing judgment.

■■ We conclude that the judgment was right, with respect to Buffalo and the latter's counterclaim, but wrong to the extent that it awarded the United States nothing on its claim against Nesbett and Malcolm, and that the United States is entitled to recover the full amount of its claims against the latter two defendants.

It is clear from this record that Buffalo and RFC (as well as Nesbett and Malcolm) understood that RFC would not pay the entire amount of the loan to Buffalo in a lump sum, but rather agreed that RFC would make partial disbursements from time to time until the entire amount was paid. And the district court found, on substantial evidence, that major revisions in the original plans, entailing considerably greater costs than had been originally estimated, were necessitated; that the project could not be carried out within the limits of the present loan and that more money would be required if the mine was to be made operative.[2]

We agree with the district court that these facts fully justified RFC's action.

It is familiar contract law that prospective inability of one party's performance will excuse a condition precedent of the other's performance, unless the disability is removed before the other relies thereon. This rule is well stated in RESTATEMENT, CONTRACTS § 306 (1932):

> "Where failure of a party to a contract to perform a condition or a promise is induced by a manifestation to him by the other party that he cannot or will not substantially perform his own promise or that he doubts whether though able he will do so, the duty of such other party becomes independent of performance of the condition or promise. He has power to nullify his manifestation of unwillingness or inability by retracting it, so long as the former party, in reliance thereon, has not changed his position."

We reject Buffalo's contention that RFC's decision was arbitrary. Before making the loan RFC had insisted that Buffalo attempt to secure the money from some bank or other source. Buffalo made diligent efforts to do so but was uniformly turned down because the risk was too great. Moreover, the loan was not haphazardly made; naturally enough it was based upon Buffalo's representation of what would be required and the cost of the work, and the amount of the loan was directly geared to Buffalo's considered cost estimates. Thus when RFC was suddenly confronted with Buffalo's application for an additional loan and learned that Buffalo had miscalculated; that its

be enforced separately from Buffalo's primary obligation and hence it was not necessary for RFC to first proceed against Buffalo and the security before seeking recovery for Nesbett and Malcolm. Ludington Lumber Co. v. Metropolitan National Bank, 55 F.2d 169, 84 A.L.R. 287 (6th Cir. 1932); Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corporation, 243 F.2d 196 (10th Cir. 1957). See Terry v. Tubman, 92 U.S. 156, 160, 23 L.Ed. 537 (1875).

2. The following was one of the court's findings:

"The disclosures of fact in the application for the additional loan constituted sufficient evidence of 'adverse change' to justify the Agency Manager of RFC to refuse to advance further funds on the loan by reason of the inability of Buffalo to reach the projected production total of 400 tons per day and by reason of the fact that Buffalo would not have been able to pay back the original loan according to the terms of said note unless additional funds were made available to it by RFC."

plans required major revision, and that a considerable additional sum of money beyond the amount previously committed would be required to finance the changes, we think RFC acted prudently in refusing to become more deeply involved in the venture and that its action was fully in accord with Federal policy, which the district court observed in its findings that "requires the protection of the security of Federal investments to the extent that the government need not, as expressed by the witness Plein, send good money after bad."

■ Nesbett and Malcolm argue that their liability was conditioned on RFC's full performance of its loan agreement. Their written guarantees contain no such express condition, but simply provide that: "[T]he undersigned hereby unconditionally guarantees to Reconstruction Finance Corporation * * * the due and punctual payment when due, whether by acceleration or otherwise * * * of the principal and interest on * * * the note of the debtor * * *"[3]

But it is clear that Nesbett and Malcolm knew that the total amount of the loan was needed to put the mine into production and that they expected that this in turn would provide Buffalo with the means to repay RFC. As the district court found "[A]ll parties realized that the project would be a total loss unless the mine was placed on a production basis and it was understood that the guarantors would be liable only if the venture failed after the full amount of the loan had been disbursed."

When, however, it became apparent that Buffalo could not put the mine into production within the limits of the amount RFC had agreed to loan, the principle of prospective inability, applicable to excuse RFC from performing its promise to Buffalo to disburse the entire loan also applied to this condition precedent to the guarantors' liability on their guarantees.[4] The reason is plain: In the light of the circumstances, it would have gained Buffalo nothing to have received the remainder of the loan proceeds. Even if those moneys were disbursed and

---

3. The guarantees are properly construed to be bilateral in nature with a condition precedent of full disbursement of the loan, rather than unilateral and hence dependent upon RFC's full disbursement of the loan. As shareholders in Buffalo, Nesbett and Malcolm were personally interested in the success of the business. It would seem reasonable to conclude that they wanted RFC's present assurance that it would disburse the full amount Buffalo needed and that RFC likewise intended to secure immediate protection and, since Buffalo's note, which they were guaranteeing, indicated that the proceeds of the loan would be disbursed in partial payments rather than a lump sum, it is unlikely that RFC and the guarantors did not intend to be under obligations to one another until after the full amount was disbursed. "In case of doubt," says the Restatement of Contracts, § 31, "it is presumed that an offer invites the formation of a bilateral contract by and acceptance amounting in effect to a promise by the offeree to perform what the offeree requests, rather than the formation of one or more unilateral contracts by actual performance on the part of the offense." See also Hammond v. C. I. T., 203 F.2d 705 (2d Cir. 1953); Fried-

man v. Decatur, 77 U.S.App.D.C. 326, 135 F.2d 812 (1943); Davis v. Jacoby, 34 P.2d 1026 (Cal.1934).

4. The district court excused RFC from full performance of its agreement with Buffalo on the basis of an "adverse change" clause in the written loan authorization which RFC issued in connection with the loan. This clause stated in substance that RFC could discontinue making disbursements whenever it appeared there was an "adverse change" in Buffalo's financial prospects. Although the court found Buffalo was not "a party" to this instrument, it concluded Buffalo was bound because of its knowledge of the contents. However, the court held that the authorization was not binding on the guarantors because they were not "parties" to it.

That parties may by private agreement excuse performance due one to the other may be freely conceded. The mere fact that they have done so, however, does not preclude a like result from arising by operation of law. Thus where, as here, the adverse change became tantamount to prospective inability, Buffalo was excused from full performance by operation of law.

spent, the mine could not have been made productive; Buffalo would have defaulted on its note and the guarantors would be called upon to pay. The law does not require a useless act, particularly where, as here, it would only enhance the actor's loss.[5]

The judgment is modified in accordance with the conclusions stated in this opinion and, as modified, is affirmed.

---

5. Had the guarantees been of the entire amount of the loan, we entertain no doubt that the guarantors would have objected, and properly so, to any further advances when it became apparent Buffalo could not repay them.