David **LUXENBERG**, Appellant,

v.

**MAYFAIR EXTENSION, INC.,** et al., Appellees.

No. 20204.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 16, 1966.

Decided July 26, 1967.

Mr. Warren E. Magee, Washington, D. C., with whom Messrs. Thomas G. Laughlin and Hans A. Nathan, Washington, D. C., were on the brief, for appellant.

Mr. Joel C. Wise, Washington, D. C., with whom Mr. Roger Peed, Washington, D. C., was on the brief, for appellees.

Before BAZELON, Chief Judge, and DANAHER, Circuit Judge, and COFFIN\*, Circuit Judge of the United States Court of Appeals for the First Circuit.

DANAHER, Circuit Judge:

The Board of Commissioners of the District of Columbia filed a complaint to enforce an order of the Department of Licenses and Inspections that appellee, Mayfair Extension, Inc., raze certain buildings wherein the appellant was lessee. The court entered an order accordingly on October 27, 1965. Having been joined in that action as a party defendant, Luxenberg had filed his third party complaint alleging an anticipatory breach by and claiming damages from Mayfair.[1] This appeal challenges as er-

---

\* Sitting by designation pursuant to 28 U.S.C. § 291(a).

1. In light of the evidence developed at trial, Gospel Spreading Association, Inc. and L. S. Michaux were joined as parties and aligned with Mayfair, and there-upon were treated as representing a single interest in the realty here involved. All three will hereinafter be referred to as appellees. Sixty per cent of the Mayfair stock is owned by Gospel, and forty per cent is owned by Michaux, who is also president of both corporations.

roneous the judgment[2] which was entered in favor of the appellees.

## I

The November, 1951 lease under which Luxenberg first gained status accorded "the exclusive right to conduct a food store in the present existing premises" for the duration of the lease "should said premises remain in existence, or until the present building * * * is demolished for reconstruction or replacement purposes."

Additionally the lease specified "Upon the demolition of the present premises and upon completion of replacement facilities," the lessee was to have "the first option to lease the food market and grocery facilities in said replacement facilities * * *."

After an earlier renewal, the lease of the same premises was again extended for five years from August, 1961, its terms to remain in full force and effect, with certain modifications. The lease as modified was executed in the name of Mayfair Extension, Inc. by L. S. Michaux, its president. The term was further extended for five years from November, 1966, just as the parties had agreed. Importantly, it was expressly provided that the lessee's "first *option* to lease the food and grocery facilities which *might replace* the existing premises after the *possible* demolition thereof" (emphasis added) was to remain in full force except as to "the rate of rental to be paid in such case." The lessee in the circumstance mentioned was to pay an amount equal to a bona fide offer which the lessor might receive from another prospective tenant. Luxenberg was to have thirty days after receipt of notice of any such terms "within which to elect to exercise said option to lease the said replaced facilities."

It appears that the parties knew from the very outset of their dealings that the store structure was subject to demolition for non-compliance with a 1946 building permit. The trial judge found that the District's proceedings had formally been initiated in September, 1962, had thereafter been carried through various administrative review steps but had culminated in a court order that the original structure be razed and that the lots be cleared by February 1, 1966.

It is apparent that the trial judge concluded, and we agree, that Luxenberg entitled to the rights of a lessee in the originally leased premises so long as they were permitted to stand. Otherwise, upon demolition of the building, the appellant had been accorded only the first option to lease the food and grocery facilities in a structure which "might" replace the leased premises. Mayfair was under no obligation to construct a new building. Moreover, it is clear that if and after replacement facilities actually should have been constructed, recognition of the timely exercise of Luxenberg's option was to depend upon his matching whatever rate of rental might be specified in a bona fide offer to be submitted by another prospective tenant. We doubt that Luxenberg would seriously contend to the contrary respecting any of the foregoing conclusions. Moreover, he testified that he was "willing to meet a bona fide [rental] offer and am willing to pay it."

But the demolished structure was not replaced. No time had been fixed within which Mayfair was to reach a decision. Mayfair may or may not rebuild the grocery store facilities. If it shall do so, Luxenberg may elect to exercise the option in accordance with the terms mentioned.

## II

The appellant claimed at trial and argues here that the appellees were guilty of an anticipatory breach of his rights. His contention stems from the fact that the appellees as of May 14, 1964, acting through the appellee Michaux, had signed a lease with a super-

---

2. The memorandum filed by Judge Walsh appears *sub nom* Tobriner v. Mayfair Extension, Incorporated, 250 F.Supp. 614 (D.D.C.1966) to which reference may be had for details not herein set forth.

market chain, Grand Union Company. The term was to run until July 31, 1980, and the premises included the very area covered by Luxenberg's option. The appellant argues that because of the provisions of that instrument, the appellees had put it beyond their power to perform their obligations to Luxenberg.

The record shows that about a year before the execution of the Grand Union lease, appellee Michaux had turned to one Wallace Agnew for professional assistance in financial transactions involving real estate. Agnew testified that he had sought to improve the financial position of the appellee Michaux and the corporations controlled by him. Agnew was aware that Luxenberg for some years had been Mayfair's lessee but had no knowledge that the term of his lease had been extended. On the assumption that the lessee had simply held over, Agnew on August 5, 1964 wrote to Luxenberg, notified him that the original leased structure had been ordered demolished, and requested Luxenberg to vacate the premises on or before October 1, 1964. In early September, Agnew with Michaux had attended a conference with Luxenberg's attorney and a lawyer from Agnew's firm. Copies of the extension document were distributed among those in attendance, and the status of Luxenberg was thereupon recognized. Agnew promptly wrote a letter under date of September 10, 1964 withdrawing the August 5, 1964 notice to vacate, cancelling the request, and giving notice that his "principal does not at this time intend to demolish the existing premises." Additionally, the letter reaffirmed the Luxenberg lease and informed the appellant that the "lessor under such lease intends to follow the terms required by it to be performed under such lease, as amended."

The May, 1964 lease to Grand Union in elaborate detail spelled out the respective rights of the appellees as "Landlord" and of Grand Union as "Tenant." We may note as typical for present purposes:

"The Landlord shall commence construction of the Tenant's store on or before January 1st, 1965, and if Landlord shall fail to commence construction by said date Tenant may cancel this lease at any time thereafter before such construction shall be commenced."

"The Tenant agrees that it will provide the Landlord with 60 days advance written notice of any cancellation of this lease pursuant to the provisions of paragraph 2 hereof, and further agrees that if on the first day of December, 1965 the premises are substantially under construction, it will defer exercise of its right of cancellation so long as such construction is continued with diligence and continuity."

"The tenant presently considers the addition of at least 500 units to the Apartment Development known as Mayfair Mansion Apartments lying adjacent to the Shopping Center essential to its [sic] profitable business operation in the demised premises. It is therefore agreed that unless the Landlord shall on or prior to September 1, 1964, guarantee in writing to the Tenant that it will include an additional 500 units in said Apartment Development prior to the delivery of the demised premises to the Tenant, the Tenant may cancel this lease at any time thereafter prior to October 1, 1964."

"The Landlord covenants and warrants it has full right and lawful authority to enter into this lease for the full term herein granted and for all extensions herein provided, and that it has a good and marketable title to the premises, free and clear of all occupancies, tenancies, mortgages, liens and other encumbrances except the following: None."

The testimony before the trial court disclosed that Grand Union had not cancelled the lease despite its right to do so. Despite the apparent incompatibility between the Grand Union lease and the outstanding lease to Luxenberg, the trial judge observed that the appellees had not yet placed it out of their power to per-

form, they had not sold the property, whatever rights Luxenberg had still remained in effect,[3] and Mayfair had expressed its intention to continue performance under the Luxenberg lease.

■ The trial judge concluded—we think, correctly[4]—that the evidence failed to disclose a clear and unequivocal breach of the contract rights of Luxenberg. We go one step farther and say that if replacement facilities shall be constructed within the term of Luxenberg's lease and if Luxenberg shall elect to meet a bona fide offer to pay a rental equal to that offered by any prospective tenant, Grand Union or other, he will be entitled to the benefit of his agreement. That is as far as his conditional contract can be said to go.

But, the appellant would have us say the appellees had bound themselves, within a time certain, to erect a building for Grand Union. However he was not a party to that contract and had gained no rights under it; indeed, to the contrary, his whole claim stems from his contention that the rights purportedly created in favor of Grand Union were in derogation of his own.

The appellant next argues that we had earlier resolved similar issues in favor of his position in Friedman v. Decatur Corporation, 77 U.S.App.D.C. 326, 135 F.2d 812 (1943). Not so. There the appellant had agreed to buy certain land respecting which the contract was to be voidable if the seller should find it impossible to obtain certain wharfage facilities and the privilege of running a pipeline from the wharf to the premises in question. The agreement of the parties was expressly subject to that condition which, we observe, had been inserted for the benefit of the buyer. He could have waived performance of the condition. The seller could not obtain the benefits of the contract unless it had performed that condition. Such performance, however, might be excused if it should develop that the buyer would have failed to carry out his promise to acquire the premises whether the seller performed the condition or not. Despite efforts by the seller to fulfill the requirements of the condition, the buyer notified the seller that since he had been unable to complete business arrangements with an oil company, he could not and *would not* perform his part of the contract. The anticipatory breach by the seller was thus excused when the buyer cut off all pending efforts on the part of the seller to fulfill the condition. The appellant's reliance upon *Friedman* is unavailing.

Luxenberg points for support to Burke v. Thomas J. Fisher & Company,[5] 127 F. Supp. 1 (D.D.C.), aff'd, 95 U.S.App.D.C. 85, 219 F.2d 767 (1955). There an anticipatory breach of contract was found where a purchaser refused to perform his contract to buy certain real estate. In the lawsuit which followed, the purchaser contended that the tender of a deed was a condition precedent to his obligation to pay. The trial court found, correctly we concluded, that the condition of tender had been excused since the purchaser had clearly indicated his intention not to perform *regardless* of the tender.

Other cases cited by the appellant have no applicability. The appellant can not escape the fact that the construction of replacement facilities by the appellees was a condition precedent to the exercise of his option. The appellees, as owners, had simply decided not to fulfill a condition which they were under no legal obligation to meet. Since the owners had incurred no obligation to build, they had incurred no obligation to lease until and unless they built. There was no escalation of the appellant's rights by virtue of the lease between the appellees and Grand Union.

Affirmed.

---

3. Luxenberg caused its lease as extended to be recorded September 24, 1964. Cf. D.C.Code § 45–502 (1961), 31 Stat. 1268, ch. 854, § 500.

4. Cf. Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953 (1900).

5. Factual details are developed in the opinion of the trial court, *ubi, supra.*