The **WILDERNESS SOCIETY**, a D.C. non-profit corporation, Appellant,

v.

Charles L. **COHEN** and Beatrice Goldberg, Appellees.

No. 4896.

District of Columbia Court of Appeals.

Argued Jan. 12, 1970.

Decided July 20, 1970.

---

7. Alves v. Alves, D.C.App., 262 A.2d 111 (1970); *cf.* Schiller v. Schiller, *supra* n. 4.

8. *Cf.* Sheridan v. Sheridan, D.C.App., 202 A.2d 653 (1964).

Norment Custis, Washington, D. C., for appellant.

Edmund H. Feldman, Washington, D. C., for appellees.

Before HOOD, Chief Judge, and KERN and NEBEKER, Associate Judges.

HOOD, Chief Judge:

Appellant, a nonprofit organization, offered by brochure various trips into America's wilderness areas. The prospectus contained, on the last page, the application form used by appellees to make their reservations. Above this form, the following language appeared:

> In the event of a cancellation, a refund will be made only if the reservation is taken by another applicant. This action is necessary because of the need to contract well in advance for horses, food, and equipment. Whenever possible, an effort will be made by the Society to fill cancelled reservations in order to permit refund.

Appellees submitted their application with a deposit and "several days later" paid the remainder of the trip's price— $285 per person, or $570 total. Around August 1, 1966, about 20 days before the trip was to commence, appellees notified appellant that they would not take the trip.

The riding trip through Yellowstone National Park was conducted and "packed" by one Glover. Under the terms of its contract with Glover, appellant paid $235 per reservation. Appellant had until August 10, 1966, to notify Glover of "the final number of riders enrolled in the party."

Appellees did not show up for the trip, and they brought this action to recover the price paid. The trial court, sitting without a jury, held that appellant was under a duty to mitigate damages, that appellant failed to carry out this duty, and that appellees were thus entitled to a return of part of the contract price—$235 per person. We reverse.

In their brief appellees make the flat statement that they breached their contract. From that premise, by an argument we cannot follow, they conclude they are entitled to recover. It is quite plain that, despite appellees' assertion to the contrary, they did not breach their contract. The contract was unilateral in the sense that it consisted of a promise on the part of The Wilderness Society supported by an executed consideration, i. e., the payment of the charges by appellees.[1] Having made the payment, appellees could not breach the contract. They made no promise to take the trip. Their failure to go on the trip was simply a failure to exercise their right and was not a breach of their contract. Consequently any claim they have must be based on a breach of contract by Wilderness, and there is no evidence of such a breach.[2]

The contract plainly stated that in the event of cancellation a refund would be made only if the reservation was taken

---

1. *See* Friedman v. Decatur Corp., 77 U.S. App.D.C. 326, 135 F.2d 812 (1943); Craddock v. Greenhut Constr. Co., 423 F. 2d 111 (5th Cir. 1970).

2. Certainly the failure of appellees to take the trip cannot be viewed as a failure by appellant to provide the trip.

by another applicant, and the uncontradicted testimony is that appellees' reservations were not taken by others. If the provision that "[w]henever possible, an effort will be made by the Society to fill cancelled reservations in order to permit refund", placed an obligation on the Society, there is no evidence that it failed to meet the obligation, and the burden of proving it was on the appellees. The statement by the Society of the reason why refunds could not be made appears to be only an explanation, and does not have the effect of incorporating into the contract between the Society and appellees the contract between the Society and the packer. Appellees' cancellation cannot impose on the Society a legal obligation to take some action on its contract with the outfitter, a contract to which appellees were not parties.

█ Implicit in appellees' "theory of recovery" is the doctrine of mitigation of damages, but that doctrine relates to a defense and does not itself give rise to a right of recovery. Indeed, since appellees had not breached their contract, the Society had not been damaged, and had no damages to mitigate. Nor can we find any other "theory" by which we can sustain the holding of the trial court. Like mitigation of damages, any discussion of forfeiture or liquidated damages is completely irrelevant to the present case. For the question of damages does not arise until a right to recovery has first been established. Further, recovery under a theory of restitution, be it unjust enrichment or quantum meruit, is not available to appel-

lees, because the return of the cash price for not going on the trip was expressly covered by the contract terms.[3]

█ In summary, the case is one where two people paid for a trip which they could have taken, but for reasons purely personal to them decided against it, and sought a refund on grounds not permitted by their agreement. There is no basis for recovery.

Reversed with instructions to enter judgment for appellant.

KERN, Associate Judge (dissenting):

Of each $285 which Wilderness, a nonprofit organization, received as payment for its horseback trip through Yellowstone Park, it retained $50 for its overhead and paid over $235 to one Glover, who provided the horses, equipment and food, and guided the travellers. Appellees advised Wilderness that they could not come well before Wilderness became obligated to Glover to pay for them. Had appellees at that time owed Wilderness *any* balance for the trip, I take it that the majority would recognize that Wilderness, the non-breaching party to the contract, could not have recovered more than $100,[1] representing its total damages. Amis v. Air Conditioning Training Co., D.C.Mun.App., 65 A.2d 213 (1949).[2]

What concerns me is that solely because appellees happened to have paid the entire amount due (and as a result find themselves suing Wilderness rather than defending or counterclaiming in a suit

3. *See* Leba v. Sills, D.C.Mun.App., 175 A. 2d 599 (1961) (quantum meruit); Gebhardt Bros., Inc. v. Brimmel, 31 Wis.2d 581, 143 N.W.2d 479, 481 (1966) (unjust enrichment); Smith v. Stowell, 256 Iowa 165, 125 N.W.2d 795, 800 (1964) (unjust enrichment); Abinet v. Mediavilla, 5 A.D. 679, 169 N.Y.S.2d 231, 232 (1957) (quantum meruit).

1. Nor could it have *retained* more than $100. See the discussion of Restatement of Contracts § 357, *infra*.

2. A student contracted for a study course to be completed at home and then augmented by two weeks' training in another city. He discontinued the course before undergoing the two weeks' training and was sued for the balance of his payment for the course. We denied recovery because there was no showing that the plaintiff had spent or become obligated to spend money for that part of the course to be given away from his home.

brought by Wilderness for a balance due), the majority is willing to award Wilderness a windfall of $470, in addition to $100 damages the record shows it sustained. I cannot logically reconcile this difference in result. *See* Michigan Yacht & Power Co. v. Busch, 143 F. 929, 934 (6th Cir. 1906).

I believe that an application of sound contract law principles, as well as logic, requires an affirmance in this case of the trial court's award of $470 to appellees and retention by Wilderness of $100. The Restatement of Contracts Section 357 (1932), adopted by this court in Bainum v. McGrady, D.C.Mun.App., 117 A.2d 462, 464 (1955), provides (footnote added):

> (1) [w]here the defendant [*i. e.,* Wilderness] fails * * * to perform his contract and is justified therein by the plaintiff's [*i. e.,* appellees'] own * * * non-performance of a condition, but the plaintiff has rendered a part[3] performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment, except as stated in Subsection (2), for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach * * * if
>
> *     *     *     *     *     *
>
> (b) the defendant, with knowledge that the plaintiff's * * * non-performance of condition has occurred or will thereafter occur * * * accepts the benefit of it, or retains property received although its return in specie is still not unreasonably difficult or injurious.
>
> (2) The plaintiff has no right to compensation for his part performance * * * if the contract provides that

it may be retained and *it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty.* (Emphasis added.)

*See also* Amtorg Trading Corp. v. Miehle Printing Press & Mfg. Co., 206 F.2d 103, 105–106 (2d Cir. 1953). Wilderness failed to provide the trip for the appellees, but its failure to perform was justified by the wrongful refusal of appellees to accept performance. *See* 5 A. Corbin, Contracts § 1233 (1951); 6 *Id.,* § 1264 (1962). Since I believe it clear that Wilderness has received a benefit greatly "in excess of the harm" appellees caused it, I would allow appellees to recover the "net benefit" to Wilderness of $470.[4]

The majority believes that a refund to appellees is barred by the contract between the parties. The provision permitting refund to one who cancels his reservation if his place were taken by someone else[5] was intended by its express terms to protect appellant after it had made final arrangements for "horses, food, and equipment" with its supplier. Wilderness had not made final arrangements with Glover when appellees cancelled. "[F]orfeiture clauses are always strictly and narrowly construed and forfeiture of a right is avoided whenever a court can discern a rational basis for that result." Neuffer v. Bakery and Confectionery Workers International Union, 113 U.S.App.D.C. 334, 339, 307 F.2d 671, 676 (1962) (Burger, J., dissenting); *accord,* Rush v. Kirk, 127 F.2d 368, 370 (10th Cir. 1942); In re Murray Realty Co., 35 F.Supp. 417, 419–420 (N.D.N.Y. 1940). To permit appellant to retain appellees' full payment, which so greatly exceeded the loss it actually incurred as a

---

3. It is immaterial that appellees may be considered to have fully performed, because "the consideration due from the defendant [appellant] is something other than a liquidated debt [*i. e.,* the trip to Yellowstone]." Restatement of Contracts § 350 & Comment b (1932).

4. Where, as here, the return of money, and not specific property, is requested, the question of the difficulty of "return in specie" is not presented.

5. There is considerable doubt that replacements could have been added because the Yellowstone Park trip was already *over-subscribed* when appellees cancelled.

result of appellees' cancellation, would impose a penalty in the nature of a forfeiture, which Section 357(2) of the Restatement expressly rejects. I would affirm.